Filed 2/25/16  P. v. Harlow CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C073330 |
| v. | (Super. Ct. No. 12F03221) |
| STEVEN FRANK HARLOW, | |
| Defendant and Appellant. | |

Defendant Steven Frank Harlow began sexually abusing his stepdaughter when she was 11 years old.  A jury convicted him on 12 counts of lewd and lascivious acts with a child under the age of 14 years, three counts of lewd and lascivious acts with a child who was 14 years of age, and one count of using a minor to perform prohibited acts.

Defendant now contends the trial court erred in admitting (1) uncharged sexual conduct evidence under Evidence Code sections 1108 and 352; (2) expert testimony concerning child sexual abuse accommodation syndrome (CSAAS); and (3) the CSAAS expert's response to the prosecutor's hypothetical question, which tracked the facts in this case and improperly suggested the minor had been sexually abused.

1

We conclude (1) defendant's claims regarding Evidence Code sections 1108 and 352 lack merit; (2) even if defendant did not forfeit his claims regarding the admission of CSAAS evidence, the claims fail on the merits; and (3) although the prosecutor's hypothetical question exceeded the permissible limits for expert testimony on the subject, no prejudice resulted from admission of the evidence because the jury could not reasonably understand that the expert was providing an opinion about whether the minor was sexually abused.

We will affirm the judgment.

BACKGROUND

Defendant married the minor's mother when the minor was two years old. When she was 15 years old, the minor told her mother, during a heated argument, that defendant had been molesting her for four years. That was the first time the minor told anyone about the abuse.

The mother contacted the police and defendant was placed under arrest.

The mother told police she saw defendant looking at images of naked prepubescent girls. At a subsequent interview, the mother said she confronted defendant about seeing child pornography on his computer and defendant did not deny it. According to the mother, defendant said he found prepubescent girls attractive looking.

Police interviewed the minor three times. The minor provided more details about the sexual abuse each time police interviewed her, but she did not recant her accusations against defendant. There were inconsistencies in the minor's accounts and she could not specifically remember what happened during each incident of molestation.

Police searched defendant's home and seized a white massager, which the minor told detectives defendant had used on her. Police also seized defendant's red Samsung cell phone, a computer, a digital camera, and three DVDs containing adult pornography. No data could be retrieved from defendant's cell phone. There was evidence on the computer that someone had visited websites containing sexually explicit materials, and

2

one website possibly contained child pornography, but there was no child pornography on the computer or the digital camera. The computer contained a program called Evidence Eliminator, which can be used to permanently erase files from the computer and can be set to automatically run at specified times.

At trial the minor testified defendant began to molest her when she was 11 years old. The first act of molestation occurred in "the downstairs" room, where the family kept a computer that defendant used primarily. Defendant showed the minor pornography on the computer while she sat on his lap, and defendant touched the minor's vaginal area with his hand, under the minor's clothes. Defendant masturbated while touching the minor. After the first incident, defendant touched the minor in the same manner multiple times a month. Defendant ejaculated sometimes.

Defendant began molesting the minor in the living room when she was 11 or 12 years old. The acts in the living room occurred multiple times a month. The minor described a typical molest incident in the living room as involving defendant rubbing her stomach, then moving his hand to her breasts or her vaginal area, sometimes over her clothing but most of the time under her clothing. The minor said defendant may have put his fingers inside her vagina a couple of times. Defendant last touched the minor's vaginal area and breasts about a week before his arrest.

Defendant put a massager on the minor's vaginal area more than once in the living room. He masturbated while using the massager on the minor. Sometimes defendant ejaculated.

Defendant began molesting the minor in her bedroom when she was about 11 or 12 years old and continued until she was 15 years old. The minor described an average incident of molestation in her bedroom as follows: Defendant entered her bedroom after everyone else went to bed. He rubbed the minor's back or stomach, then her breasts or vaginal area. He ejaculated during one of these night visits. He molested the minor in her bedroom about seven or eight times a month.

3

Defendant also took photographs of the minor in her bedroom on more than one occasion. The minor agreed to go to her room with defendant to have her photographs taken because she was scared to say no, even though defendant never threatened her or instructed her not to tell anyone. Defendant used his red cell phone or a black and silver camera to take the photographs. The minor was naked in most of the photographs. Defendant instructed the minor to get on her hands and knees for some of the photographs. He masturbated sometimes while taking the photographs. He ejaculated five times while taking photographs of the minor. He showed the minor some of the photographs he had taken of her on his computer.[1] The photographs showed the minor's vagina, butt, and bare breasts. Defendant stopped taking photographs of the minor when she was about 14 years old.

The minor identified People's exhibit number 16, which police recovered from defendant's computer, as a photograph focusing on her butt. The photograph was taken with a Samsung SCH-U450 device.

The minor testified everything she had described to the jury was true. She said she loved defendant despite what he was doing to her. She never tried to avoid him. She hoped he would change. She maintained she still loved and missed defendant.

The minor's mother testified she saw defendant rub the minor's back and saw the minor sitting on defendant's lap watching something on the computer, but she never saw defendant do anything that made her suspect he was molesting the minor. According to the mother, the minor never appeared afraid of defendant and never seemed uncomfortable or afraid of going to her bedroom when defendant was at home.

The mother testified she lied to police about seeing child pornography on the family's old computer. She admitted she was angry with defendant and wanted to hurt

---

[1] The minor said defendant saved the photographs he took of her in a file named "Innie." Police searched for that file on defendant's computer but did not locate it.

4

him.  She also said she was not thinking clearly at the time police interviewed her.  The mother said she never saw child pornography on defendant's computer, and she never heard defendant say he found prepubescent girls attractive.  She admitted she still loved defendant and wanted him released.

The prosecutor played audio recordings of the mother's statements to police during the trial.  The mother acknowledged the voice on the recordings belonged to her.  She agreed she sounded calm in the recorded interviews, and it sounded like she took the time to think things through before she spoke.

The People called Dr. Anthony Urquiza as an expert on CSAAS.  We will discuss Dr. Urquiza's testimony in sections II and III *infra*.

Defendant testified at the trial.  He denied committing the charged offenses.  He agreed the minor sat on his lap and he sometimes rubbed the minor's back, upper chest, stomach, or legs.  But he did not think there was anything inappropriate about those acts.  Although he viewed pornography on his computer, he never did so when his children were around and he never looked at child pornography.  Defendant denied ever watching pornography with the minor, getting aroused when he rubbed her, taking photographs of her while she was naked, using a massager on her, masturbating in front of her, or ejaculating on her.  He denied ever telling the minor's mother he found prepubescent girls attractive.  He did not recognize People's exhibit 16 and did not know who took that photograph.  He installed Evidence Eliminator on his computer for his sign business, not to erase child pornography or inappropriate photographs of the minor.  Defendant could not think of any reason why the minor would accuse him of sexual abuse.

The jury convicted defendant on 12 counts of lewd and lascivious acts with a child under the age of 14 years (Pen. Code, § 288, subd. (a) -- counts one through 12),[2]

---

[2]  Undesignated statutory references are to the Penal Code.

three counts of lewd and lascivious acts with a child who was 14 years of age (§ 288, subd. (c)(1) -- counts 13 through 15), and one count of using a minor to perform prohibited acts (§ 311.4, subd. (c) -- count 16). The trial court sentenced defendant to an aggregate prison term of 30 years eight months.

DISCUSSION

I

Defendant contends the trial court erred in admitting uncharged sexual conduct evidence, namely, that several years ago defendant possessed child pornography and said he was attracted to prepubescent girls. Defendant claims that, on its face, Evidence Code section 1108, which authorizes the admission of other sexual offense evidence, violates his constitutional right to due process of law. He argues his alleged admission that he found prepubescent girls attractive is not admissible under Evidence Code section 1108 because the statement is not a sexual offense, and his trial counsel rendered ineffective assistance by failing to challenge the admissibility of his alleged statement. He also contends the uncharged sexual conduct evidence is inadmissible under Evidence Code section 352.

A

The People moved in limine to admit evidence that the mother saw defendant looking at child pornography on his computer, and that defendant admitted he found prepubescent girls attractive. The People sought to admit the evidence under Evidence Code section 1101, subdivision (b) to show intent, and under Evidence Code section 1108 to show defendant's propensity to commit sexual offenses like those charged in this case and that defendant committed the charged offenses.

The trial court conducted an evidentiary hearing to decide the People's motion. The mother testified at that hearing that she may have lied to police about seeing child pornography on defendant's computer and about defendant admitting he found prepubescent girls attractive. She claimed she was distraught and wanted defendant to

6

"rot in jail for the rest of his life" when she made her statements to police. The mother said she still loved defendant and wanted him to go home.

The prosecutor played audio recordings of the statements the mother provided to police. The mother identified her voice on the audio recordings. In one recorded interview, the mother said she saw defendant looking at "child porn" on his computer. She knew what she saw was "child porn" because what she saw made her uncomfortable. The images she saw were of naked "pre-puberty" girls, that is, girls who looked like they were eight to 10 years old who "were not developed." In another recorded interview, the mother said she confronted defendant about seeing child pornography on his computer and defendant did not deny it. The mother again described the images she saw as images of naked "pre-puberty" girls. She specified the girls in the images had not started to develop breasts and had no pubic hair. The mother said defendant told her he found girls that age attractive. The mother said the girls in the images were around the minor's age and younger.

After hearing argument from counsel, the trial court ruled the proffered evidence was admissible under Evidence Code section 1108, but not under Evidence Code section 1101, subdivision (b).

B

Defendant argues that on its face, Evidence Code section 1108 violates the due process clause of the United States Constitution. Defendant did not raise the due process claim in the trial court, but even if it is not forfeited, the claim lacks merit. The California Supreme Court has rejected a due process challenge to Evidence Code section 1108, holding that a trial court's discretion to exclude propensity evidence under Evidence Code section 352 saves Evidence Code section 1108 from a due process challenge. (*People v. Falsetta* (1999) 21 Cal.4th 903, 915-919 (*Falsetta*); see *People v. Wilson* (2008) 44 Cal.4th 758, 796-797.)

7

Defendant acknowledges this court is bound by the Supreme Court's decision, but states he "offers the present analysis to preserve his ability to take his challenge to a higher court if need be." We follow *Falsetta* and reject defendant's claim. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

C

Defendant also contends his alleged statement that he found prepubescent girls attractive is not admissible under Evidence Code section 1108 because the alleged statement is not a sexual offense.

The People argued in the trial court that defendant committed the uncharged crime of possession of child pornography in violation of section 311.11. That statute prohibits the knowing possession or control of "any matter . . . that contains or incorporates in any manner, any film or filmstrip, the production of which involves the use of a person under 18 years of age, knowing that the matter depicts a person under 18 years of age personally engaging in or simulating sexual conduct." (§ 311.11, subd. (a).) " 'Sexual conduct' means any of the following, whether actual or simulated: sexual intercourse, oral copulation, anal intercourse, anal oral copulation, masturbation, bestiality, sexual sadism, sexual masochism, penetration of the vagina or rectum by any object in a lewd or lascivious manner, exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer, any lewd or lascivious sexual act as defined in Section 288, or excretory functions performed in a lewd or lascivious manner, whether or not any of the above conduct is performed alone or between members of the same or opposite sex or between humans and animals. An act is simulated when it gives the appearance of being sexual conduct." (§ 311.4, subd. (d).)

On appeal the Attorney General argues defendant's alleged admission was offered to show defendant knowingly possessed child pornography; the admission was not offered as "stand alone propensity evidence." The Attorney General points out that the trial court's uncharged conduct instructions referenced the crime of possession of child

pornography only. The trial court did not instruct the jury on an uncharged offense with regard to defendant's alleged admission.

Defendant forfeited his appellate claim by not raising it in the trial court. (Evid. Code, § 353, subd. (a); *People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1099; *People v. Pierce* (2002) 104 Cal.App.4th 893, 898.) Notwithstanding forfeiture, we agree with the Attorney General on the merits of defendant's claim. Defendant's alleged statement that he found young girls attractive was not offered as a sexual offense separate from possession of child pornography. Defendant's alleged statement is probative of whether defendant knowingly possessed images of nude prepubescent girls and whether the images were for the purpose of sexual stimulation of the viewer. We do not consider defendant's ineffective assistance of counsel claim because we considered the merits of his claim that his alleged statement is not a sexual offense and concluded there is no error.

D

Defendant further argues that the trial court abused its discretion in admitting the uncharged sexual conduct evidence under Evidence Code section 352.

In general, evidence of a defendant's conduct other than what is currently charged is not admissible to prove that the defendant has a criminal disposition or propensity. (Evid. Code, § 1101, subd. (a); *People v. Kipp* (1998) 18 Cal.4th 349, 369.) But as we have explained, in a case where the defendant is charged with a sexual offense, Evidence Code section 1108 authorizes the admission of evidence of the defendant's other sexual offenses if the evidence is not inadmissible under Evidence Code section 352.

In enacting Evidence Code section 1108, the Legislature recognized " 'sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial[, thus,] often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations.' " (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1160, 1164; *Falsetta, supra,* 21 Cal.4th at

9

p. 911.) Evidence Code section 1108 allows the trier of fact to consider uncharged sexual conduct evidence as evidence of the defendant's propensity to commit sexual offenses in evaluating the defendant's and the victim's credibility and in deciding whether the defendant committed the charged sexual offense. (*Villatoro, supra,* 54 Cal.4th at pp. 1160, 1164, 1166-1167; *Falsetta, supra,* 21 Cal.4th at pp. 911-912, 922.)

However, uncharged sexual conduct evidence is inadmissible if the probative value of the evidence is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (Evid. Code, §§ 352, 1108, subd. (a).) The probative value of uncharged sexual conduct evidence is increased by the relative similarity between the charged and uncharged offenses, the close proximity between the uncharged and charged acts, and the independent sources of evidence in each offense. (*Falsetta, supra*, 21 Cal.4th at p. 917.) The prejudicial impact of uncharged sexual conduct evidence is reduced if the uncharged act resulted in a criminal conviction and a substantial prison term, ensuring that the jury would not be tempted to convict the defendant simply to punish him for the uncharged act, and that the jury's attention would not be diverted by having to determine whether defendant committed the uncharged act. (*Ibid.*) We review a trial court's Evidence Code section 352 determination under the deferential abuse of discretion standard. (*People v. Avila* (2014) 59 Cal.4th 496, 515 (*Avila*).)

Defendant says evidence that he looked at child pornography had no probative value because the mother's description was too generalized to permit any conclusion about the exact content of the images she saw, and labeling the images as child pornography in the absence of the actual images was highly inflammatory. Defendant appears to challenge the trial court's preliminary determination that the mother's statements to police were sufficient for a jury to find, by a preponderance of the evidence, that defendant committed a sexual offense.

10

A " '[trial] court should exclude the proffered evidence only if the "showing of preliminary facts is too weak to support a favorable determination by the jury." ' " (*People v. Jandres* (2014) 226 Cal.App.4th 340, 353.) We review the trial court's determination of this preliminary fact for abuse of discretion. (*Ibid.*)

The prosecutor had the burden to prove the uncharged section 311.11 violation by a preponderance of the evidence. (*People v. Cottone* (2013) 57 Cal.4th 269, 286-287; *People v. Reliford* (2003) 29 Cal.4th 1007, 1015-1016.) Preponderance of evidence means the evidence on one side has more convincing force than that opposed to it. (*People ex rel. Brown v. Tri-Union Seafoods, LLC* (2009) 171 Cal.App.4th 1549, 1567; see *People v. Williams* (1920) 184 Cal. 590, 594 [preponderance means evidence on one side " 'outweighs, preponderates over, is more than, the evidence on the other side, not necessarily in number of witnesses or quantity, but in its effect on those to whom it is addressed' "].)

The trial court said the mother's testimony at the evidentiary hearing was confusing in that she said she could not remember what she saw and what defendant said. The trial court concluded, however, the fairest implication from the evidence was the mother made her statements to police before she had time to reflect and fabricate. The trial court said it would be up to the jury to decide what to make of the mother's testimony. The trial court impliedly ruled a jury could reasonably find that the mother's statements to police were credible and that such statements proved by a preponderance of the evidence that defendant violated section 311.11. Based on our review of the record, we cannot say the proffered evidence was too weak to support a jury finding, by a preponderance of the evidence, that defendant violated section 311.11. We find no error in this regard.

We also conclude defendant fails to demonstrate error under Evidence Code section 352. Evidence that defendant knowingly possessed images of naked young girls and that he found those girls attractive had some tendency in reason to show that

11

defendant was predisposed to engage in the charged sexual offenses. (*Avila, supra,* 59 Cal.4th at p. 519 [evidence that the defendant possessed child pornography was probative of his intent to commit lewd acts on the minor]; *People v. Memro* (1995) 11 Cal.4th 786, 864-865, abrogated on a different ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 638-639, fn. 18 [possession of child pornography was admissible to show the defendant had a sexual attraction to young boys and intended to act on that attraction]; *People v. Yovanov* (1999) 69 Cal.App.4th 392, 404-405 [possession of pornographic magazines containing articles about fathers having sex with their daughters indicated the defendant's continuing interest in deviant sexual activity].) To establish the count one through 15 charges of lewd and lascivious acts with the minor, the People had to prove defendant committed prohibited acts with the intent of arousing, appealing to, or gratifying his or the minor's lust, passions, or sexual desires. (§ 288, subds. (a), (c).) To establish the count 16 charge, the People had to prove defendant knowingly used the minor to pose for a photograph involving sexual conduct, such as the exhibition of the genitals or pubic or rectal area for the purpose of the viewer's sexual stimulation. (§ 311.4, subd. (c).) Defendant's commission of the uncharged section 311.11 offense is probative of whether defendant possessed the requisite lewd intent in counts one through 15 and, with regard to count 16, whether he posed the minor for a prohibited sexual purpose. (*Avila, supra,* 59 Cal.4th at p. 519; *Memro, supra,* 11 Cal.4th at pp. 864-865.)

The charged and uncharged acts involve sexual interest in young girls or sexual gratification from conduct involving such girls. The similarity between the charged and uncharged offenses is a factor for the trial court to consider in weighing the probative value and prejudicial impact of the uncharged conduct evidence. (*Falsetta, supra*, 21 Cal.4th at p. 917; *People v. Robertson* (2012) 208 Cal.App.4th 965, 991 (*Robertson*).)

Evidence of the uncharged offense is also probative because defendant denied engaging in any sexual acts with the minor. At trial, defendant's counsel accused the minor of lying. He argued the minor's behavior did not indicate she had been sexually

12

abused. He pointed out inconsistencies in the minor's reports concerning molestation. He also argued there was no semen evidence, no trace of the photographs the minor said defendant took of her, and no corroborating witness. Uncharged sexual offense evidence is highly probative where the defendant denies the charged offense occurred and there is no forensic evidence proving the charged offense occurred. (*Robertson, supra*, 208 Cal.App.4th at p. 993; *People v. Hollie* (2010) 180 Cal.App.4th 1262, 1275; *People v. Waples* (2000) 79 Cal.App.4th 1389, 1395 (*Waples*).)

Defendant argues the uncharged act is not similar to the charged offenses because the minor was not a prepubescent girl when defendant allegedly molested her. Defendant cites the minor's testimony that he began to molest her when she was 11 years old, and the molestation continued until she was 15 years old. However, defendant fails to cite the portion of the record supporting his conclusion about when the minor reached puberty. We will not consider claims made without citation to the record. (*People v. Myles* (2012) 53 Cal.4th 1181, 1222, fn. 14 (*Myles*); *Miller v. Superior* Court (2002) 101 Cal.App.4th 728, 743.)

Defendant further claims, in summary fashion, that the uncharged conduct is remote in time. Defendant forfeited the claim by failing to develop it with analysis and citation to authority. (*People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2; *People v. Galambos* (2002) 104 Cal.App.4th 1147, 1159.) Were we to consider the claim on its merits, we could not say the uncharged conduct (which occurred approximately 11 years prior to trial and about five years before defendant began to inappropriately touch the minor) is too remote or the gap between the uncharged act and the beginning of the charged conduct is so significant as to reduce the probative value of the uncharged conduct evidence. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405 [uncharged act occurred 12 years prior to trial]; *People v. Branch* (2001) 91 Cal.App.4th 274, 278, 281, 284 [uncharged sexual acts committed over 30 years before the charged offenses occurred were properly admitted under Evidence Code sections 1101 and 1108]; *Waples, supra,*

13

79 Cal.App.4th at pp. 1392-1393, 1395 [uncharged sexual acts that occurred 18 to 25 years before the charged offenses were not too remote for purposes of Evidence Code section 352]; *People v. Soto* (1998) 64 Cal.App.4th 966, 977-978, 990-992 [uncharged sexual conduct that occurred 20 to 30 years before the trial were properly admitted under Evidence Code sections 1108 and 352].)

Defendant did not argue in the trial court that the uncharged conduct evidence is unduly prejudicial because he was not convicted of that conduct. Thus, the trial court did not address whether the lack of a conviction for the uncharged conduct would unduly prejudice defendant. The claim is forfeited. (*People v. Abel* (2012) 53 Cal.4th 891, 924 [" 'What is important is that the objection fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling.' "].)

Nonetheless, we would reject the claim on its merits. We found nothing in the record showing the jury was made aware of or considered the lack of a conviction for the uncharged offense. The prosecutor and defense counsel's closing argument discussions about the uncharged conduct evidence do not refer to whether defendant was prosecuted or punished for the uncharged act. Additionally, the trial court instructed the jury on the limited use of uncharged conduct evidence. The trial court also instructed the jury on the elements of each charged offense, and said the People must prove each charge beyond a reasonable doubt and the uncharged conduct evidence does not, by itself, prove defendant was guilty of the charged offenses. As instructed, the jury was not permitted to convict defendant of the current charges simply because he previously committed a sexual offense. The instructions counterbalanced any risk the jury might punish defendant for his uncharged act. (*Falsetta, supra,* 21 Cal.4th at p. 920; *People v. Frazier* (2001) 89 Cal.App.4th 30, 42.)

14

Defendant has not demonstrated that the trial court abused its discretion in admitting the uncharged sexual conduct evidence.

## II

Defendant next contends the trial court erred in admitting Dr. Urquiza's testimony concerning CSAAS.

## A

Defendant moved in limine to exclude the proposed testimony of Dr. Urquiza under Evidence Code section 352. Defendant argued Dr. Urquiza's proposed testimony would not assist the jury because CSAAS was a "very vague theory" and victims exhibited different symptoms. Defendant said it was up to the jury, not Dr. Urquiza, to determine whether the minor was credible and whether defendant molested the minor. Defendant also argued Dr. Urquiza's proposed testimony was not relevant because CSAAS was based on cases where corroborative evidence was present, but there was no corroborative evidence in this case.

The People countered that Dr. Urquiza's proposed testimony would give the jury tools to understand whether the minor was credible. The People offered Dr. Urquiza's testimony to dispel myths that child sexual abuse victims disclosed the abuse immediately and did not continue to love their abuser.

The trial court admitted Dr. Urquiza's testimony. It said the doctor's testimony would help the jury understand why the minor did not disclose the abuse for a long time and why she professed feelings of love for her abuser. The trial court subsequently instructed the jury, pursuant to CALCRIM No. 1193, that Dr. Urquiza's testimony about CSAAS was not evidence that defendant committed any of the charged crimes. The trial court told the jury to consider Dr. Urquiza's testimony only for the purpose of deciding whether the minor's conduct was not inconsistent with the conduct of someone who had been molested, and in evaluating the minor's credibility.

15

The jury heard the testimony of the minor and her mother before hearing from Dr. Urquiza. The minor and her mother's testimonies showed the minor waited four years before disclosing that defendant had sexually abused her. The minor testified she still loved defendant even though he had molested her. The mother testified, on cross-examination, that the minor never seemed uncomfortable or fearful with defendant, and the minor did not use the lock on her bedroom door. The mother said she doubted the minor's allegations of sexual abuse because the minor enjoyed spending time with defendant, always hugged defendant, and wanted to sit next to him on the couch.

Dr. Urquiza explained CSAAS was a tool developed to educate therapists about common characteristics of children who had been sexually abused. Dr. Urquiza clarified that CSAAS was not a test or diagnostic tool to determine whether a child had in fact been molested. He said CSAAS assumed a child had been sexually abused.

Dr. Urquiza described the five parts of CSAAS: secrecy, helplessness, entrapment and accommodation, delayed and unconvincing disclosure, and retraction. He said a child sexual abuse victim may not report the abuse for a variety of reasons, including feelings of shame and fear of losing the affection the abuser provided. Dr. Urquiza explained it was not uncommon for a child sexual abuse victim to love her abuser despite the abuse.

Dr. Urquiza told the jury research showed a child sexual abuse victim typically did not protect herself from abuse when the abuser was someone with whom the victim had an ongoing relationship. And it was a myth that a child sexual abuse victim will take measures to protect herself.

With regard to accommodation, Dr. Urquiza explained some children coped with sexual abuse by disengaging from their feelings. Those children described their experience of being sexually abused without emotion or with a flat affect.

With regard to delayed and unconvincing disclosure, Dr. Urquiza said it was common for a child sexual abuse victim to delay reporting the abuse for a significant

16

period of time, and a child victim usually disclosed later if she lived in the same house as the abuser. Dr. Urquiza further explained that child victims sometimes provided vague and brief accounts initially, and then gave more details when they felt more comfortable about disclosing. Dr. Urquiza also said it was a myth that children wanted to remember what happened to them and, thus, remembered details about their abuse. He said children typically had difficulty remembering the frequency, duration, and details of an act, especially if an act happened many times and they kept the abuse secret.

With regard to recantation, Dr. Urquiza said research showed 20 to 25 percent of children who disclosed later recanted, and a child sexual abuse victim may recant because of family pressure or because the child still loved the abuser.

B

Evidence Code section 801, subdivision (a), permits the introduction of testimony by a qualified expert when that testimony is related to a subject that is sufficiently beyond common experience that the opinion of the expert would assist the trier of fact. " '[T]he admissibility of expert opinion is a question of degree. The jury need not be wholly ignorant of the subject matter of the opinion in order to justify its admission; if that were the test, little expert opinion testimony would ever be heard. Instead, the statute declares that even if the jury has some knowledge of the matter, expert opinion may be admitted whenever it would 'assist' the jury. It will be excluded only when it would add nothing at all to the jury's common fund of information, i.e., when "the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness." ' " (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1299-1300 (*McAlpin*).) We review a trial court's decision to admit expert testimony for abuse of discretion. (*Id.* at p. 1299; *People v. Wells* (2004) 118 Cal.App.4th 179, 186.)

This and other Courts of Appeal have concluded that although inadmissible to show that a child has been sexually abused, CSAAS evidence is admissible for the limited purpose of dispelling misconceptions about how child victims react to sexual

17

abuse.  (*People v. Perez* (2010) 182 Cal.App.4th 231, 245 (*Perez*); *In re S.C.* (2006) 138 Cal.App.4th 396, 418; *People v. Patino* (1994) 26 Cal.App.4th 1737, 1744 (*Patino*); *People v. Housley* (1992) 6 Cal.App.4th 947, 954-957 (*Housley*); *People v. Harlan* (1990) 222 Cal.App.3d 439, 449-450; *People v. Bowker* (1988) 203 Cal.App.3d 385, 391-392 (*Bowker*) [setting forth limitations on the admission of CSAAS evidence]; *People v. Gray* (1986) 187 Cal.App.3d 213, 217-218 (*Gray*).)  " 'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.' "  (*McAlpin, supra*, 53 Cal.3d at p. 1301.)  The California Supreme Court in *McAlpin, supra*, 53 Cal.3d 1289 and *People v. Brown* (2004) 33 Cal.4th 892 (*Brown*) approved *Bowker, supra*, 203 Cal.App.3d 385 and other cases permitting limited admissibility of CSAAS evidence.  (*Brown, supra,* 33 Cal.4th at pp. 905-907; *McAlpin, supra*, 53 Cal.3d at pp. 1301-1302.)

Defendant does not contend the trial court admitted CSAAS evidence outside the bounds articulated in *Bowker*.  Instead, he argues CSAAS evidence is not admissible because the premise underlying its admissibility -- that people commonly believe certain myths about child sexual abuse -- is no longer valid.  Defendant claims intense media discussion about child sexual assault cases has rendered the subjects addressed by CSAAS within the common knowledge of the typical juror; thus, CSAAS is no longer the proper subject of expert opinion testimony.  Defendant also claims CSAAS is junk science and is not generally accepted in the relevant scientific community as a diagnostic tool for making child sexual abuse determinations.

Defendant fails to cite any portion of the record supporting his assertions that misconceptions about child sexual abuse and child sexual abuse victims no longer exist, that the subjects CSAAS addresses are sufficiently within common experience that expert opinion would not assist the trier of fact, or that CSAAS is junk science.  For this reason, we need not consider his claims.  (*Myles, supra,* 53 Cal.4th at p. 1222, fn. 14; *Miller v.*

18

*Superior Court*, *supra*, 101 Cal.App.4th at p. 743)  Additionally, defendant did not raise the claims he urges on appeal in the trial court.  He did not, therefore, preserve the claims for appellate review.  (Evid. Code, § 353, subd. (a); *People v. Seijas* (2005) 36 Cal.4th 291, 302.)

In any event, we found no evidence in the record supporting defendant's assertions.  To the contrary, Dr. Urquiza testified people he talked to in his work still did not understand the common characteristics exhibited by victims of child sexual abuse.  For example, most people did not understand why a child sexual abuse victim may love her abuser.  Dr. Urquiza opined that sexual abuse cases receiving media attention did not educate the public about the experience of child sexual abuse victims.

Moreover, the California Supreme Court has recognized that CSAAS expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse.  (*Brown, supra*, 33 Cal.4th at pp. 905-906.)  This court recognized the same need in *People v. Sandoval* (2008) 164 Cal.App.4th 994 and *In re S.C.*, supra, 138 Cal.App.4th 396.  And in 2010, the Sixth District Court of Appeal rejected claims nearly identical to those defendant raises in this case.  (*Perez, supra,* 182 Cal.App.4th at pp. 243-245; see *Gray, supra*, 187 Cal.App.3d at p. 220 [" '[T]he subject of child molestation and more particularly, the sensitivities of the victims, is knowledge sufficiently beyond common experience such that the opinion of an expert would be of assistance to the trier of fact.' "].)

Defendant relies principally on *Commonwealth v. Dunkle* (1992) 529 Pa. 168 [602 A.2d 830] (*Dunkle*) to argue CSAAS has not gained general acceptance in the scientific community, is not probative, and does not deal with subjects beyond common experience such as to justify expert opinion testimony.[3]  More than 20 years ago, *Dunkle*

---

[3]  The *Dunkle* court described CSAAS as "an attempt to construct a diagnostic or behavioral profile about sexually abused children."  (*Dunkle, supra,* 602 A.2d at p. 832.)

19

held that expert testimony concerning typical behavior patterns exhibited by sexually abused children is inadmissible because such evidence was not generally accepted in the field in which it belonged, was not probative of child sexual abuse, and concerned subjects which were within the range of common experience. (Id. at pp. 834-838.)

We do not follow *Dunkle* for a number of reasons. Effective August 28, 2012, Pennsylvania permits expert testimony that will assist the trier of fact in understanding victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted. (42 Pa.C.S.§ 5920, subd. (b).) It remains to be seen whether CSAAS evidence is admissible in Pennsylvania under the new statute. Additionally, as an out-of-state case, *Dunkle* is not binding on us. (*People v. Troyer* (2011) 51 Cal.4th 599, 610.) More importantly, the California Supreme Court's approval of *Bowker* and *McAlpin* in *Brown, supra*, 33 Cal.4th 892, implicitly rejected the opinion expressed in *Dunkle* that CSAAS evidence is inadmissible. We adhere to the Supreme Court's view that CSAAS expert testimony is admissible. (*Brown, supra*, 33 Cal.4th at pp. 905-906.)

*People v. Robbie* (2001) 92 Cal.App.4th 1075, another case defendant cites, deals with profile evidence, in particular testimony about the conduct and characteristics of those who commit a certain type of rape. (*Id.* at pp. 1084-1085.) *Robbie* does not discuss CSAAS evidence or the misconceptions relating to child sexual abuse victims.

We also found no evidence in the record that CSAAS is junk science and has been rejected by the scientific community or its creator Dr. Roland Summit. Dr. Urquiza testified there was a lot of research supporting CSAAS. Dr. Urquiza said four individuals wrote two published articles criticizing the unconvincing disclosure and retraction aspects of CSAAS. The doctor did not testify that CSAAS had been rejected in the scientific community or by Dr. Summit. Defendant did not present in the trial court any of the

Contrary to the understanding of the *Dunkle* court, Dr. Urquiza testified CSAAS was not a diagnostic tool for identifying a child sexual abuse victim.

20

journal articles he cites in his appellate opening brief. With regard to whether CSAAS is generally accepted as a diagnostic tool for making child sexual abuse determinations, Dr. Urquiza clearly stated CSAAS was not a diagnostic tool for determining whether a child had been sexually abused. And the doctor said he did not know the defendant and the alleged victim in this case and was not giving an opinion about whether anyone was sexually abused.

It appears defendant raises a federal due process claim, although he does not clearly articulate the basis for that claim. We understand defendant to contend that the admission of CSAAS evidence violated his right to due process of law and a fair trial because that evidence is not relevant to the charged offenses. We reject such claim. CSAAS evidence is relevant to the minor's credibility, which defendant vigorously challenged at the trial. (*McAlpin, supra*, 53 Cal.3d at p. 1302; *In re S.C., supra*, 138 Cal.App.4th at p. 418; *Patino, supra*, 26 Cal.App.4th at p. 1745.) The admission of relevant evidence does not violate a defendant's due process rights. (*Estelle v. McGuire* (1991) 502 U.S. 62, 68-70 [116 L.Ed.2d 385, 396-397]; *Patino, supra*, 26 Cal.App.4th at p. 1747.) The limited admissibility of CSAAS expert testimony is well-settled. (*In re S.C., supra*, 138 Cal.App.4th at p. 418; *Housley, supra*, 6 Cal.App.4th at p. 957.) And defendant has not shown how the admission of CSAAS evidence in this case infringed upon his constitutional right to due process of law or a fair trial.

Defendant also argues his trial counsel was ineffective in not raising a due process claim. We do not address defendant's ineffective assistance of counsel claim because he has not shown the trial court erred in admitting CSAAS expert testimony.

III

Defendant further argues the hypothetical question the prosecutor posed to Dr. Urquiza, which mirrors the facts in this case, and the doctor's answer to that question improperly implied the minor had been sexually abused. Defendant says his trial counsel's failure to object to the prosecutor's question was ineffective assistance.

21

## A

The prosecutor gave Dr. Urquiza the following hypothetical and asked the doctor to give his opinion as to whether the behavior in the hypothetical was common or unusual behavior for a victim of child sexual abuse: "We had an 11-year-old girl who had been molested for four years at the hands of the only father she's ever really known, not a biological father, but the only father she's ever known. [¶] At the age of 15, discloses that she's been abused regularly for the past four years, maintains that she still loves her father very much, wants to see him home, doesn't recant, but tells us that her mother has actually been very supportive of her and has always told her to tell the truth, and comes in and testifies with little emotion. [¶] Is that uncommon for a victim of child sexual abuse?" Defendant's trial counsel did not object to the prosecutor's question.

Dr. Urquiza responded that CSAAS relates to common characteristics, not characteristics that occur in every single case. He said the hypothetical contained a lot of the common characteristics: secrecy (not disclosing for four years), helplessness (an ongoing relationship with someone who was bigger and stronger, and flat affect as a way to manage the victim's feelings), and delayed disclosure. Dr. Urquiza clarified he was not saying someone was abused. He said he did not know who the alleged victim was, did not know anything about this case, had never met defendant, and was not at trial to provide any opinion as to whether anyone in that case had been sexually abused.

## B

It is improper for an expert to apply CSAAS to the facts of the case and conclude a particular child was molested. (*Bowker, supra*, 203 Cal.App.3d at p. 393.) It is also improper for an expert to testify about CSAAS in a manner that directly coincides with the facts of the case. (*Id.* at p. 394; *Gray, supra*, 187 Cal.App.3d at p. 218; *People v. Roscoe* (1985) 168 Cal.App.3d 1093, 1100 [expert testimony must be limited to a discussion of victims as a class; the expert must not discuss the witness in the case].) It is

error to admit a CSAAS expert's response to hypothetical questions that closely track the facts of the case. (*People v. Jeff* (1988) 204 Cal.App.3d 309, 337-339.)

We agree with defendant that the prosecutor's hypothetical question was improper. However, we conclude no prejudice resulted therefrom because it is not reasonably probable a verdict more favorable to the defendant would have resulted in the absence of the inadmissible evidence. (*People v. Bledsoe* (1984) 36 Cal.3d 236, 252 [applying *People v. Watson* (1956) 46 Cal.2d 818 standard of review to erroneous admission of expert testimony]; *Bowker, supra*, 203 Cal.App.3d at p. 395 [same].) The jury could not have reasonably understood from Dr. Urquiza's response to the prosecutor's hypothetical that the minor was sexually abused. The trial court instructed the jury that Dr. Urquiza's testimony was not evidence that defendant committed any of the charged crimes. The doctor testified he did not know the alleged victim, he did not treat her, and he was not rendering an opinion about whether someone was sexually abused. Not knowing who the alleged victim in this case was and not knowing the facts of this case, Dr. Urquiza said he had no basis for rendering an opinion about whether the alleged victim was sexually abused. Dr. Urquiza also told the jury CSAAS was not a diagnostic tool to determine whether a child had in fact been molested. The prosecutor's closing argument repeated that Dr. Urquiza's testimony was not presented for the purpose of determining whether or not the minor had been sexually abused.

Under these circumstances, the jury could not reasonably understand that Dr. Urquiza was providing an opinion about whether the minor was sexually abused. Improper admission of evidence is not reversible error absent a demonstration of prejudice. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."]; Evid. Code, § 353.)

23

We need not consider defendant's related ineffective assistance of counsel claim because we conclude the erroneous admission of evidence did not result in prejudice to defendant. (*People v. Maury* (2003) 30 Cal.4th 342, 389 [to establish trial counsel was ineffective, the defendant must prove trial counsel's deficient representation resulted in prejudice to the defendant]; *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 692-693].)

DISPOSITION

The judgment is affirmed.


/S/
Mauro, J.

We concur:


/S/
Raye, P. J.


/S/
Hull, J.