Filed 12/19/18

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

THE PEOPLE,

    Plaintiff and Respondent,

       v.

PEDRO GARCIA GOMEZ,

    Defendant and Appellant.

G055352

(Super. Ct. No. 15CF0276)

O P I N I O N

Appeal from a judgment of the Superior Court of Orange County, Kimberly Menninger, Judge. Affirmed, sentence vacated in part, and remanded for resentencing.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II., III., IV.B., IV.C., and V.

INTRODUCTION

Defendant Pedro Garcia Gomez was convicted of crimes involving the sexual molestation of the victim, who is the daughter of defendant's live-in girlfriend. The molestation occurred over several years during which time the victim was between three and eight years of age. Defendant was sentenced to 35 years to life. He raises several arguments on appeal challenging his convictions and his sentence. We affirm and, as the Attorney General concedes, we must remand for resentencing on two counts.

We conclude:

1. The prosecutor's rebuttal argument did not constitute burden shifting and was not misconduct.

2. Defendant forfeited the issue of whether the trial court erred in permitting an expert to testify regarding Child Sexual Abuse Accommodation Syndrome (CSAAS). If we were to address the issue, however, we would conclude that there was no error.

3. Three jury instructions—those addressing (1) CSAAS testimony, (2) the testimony of a child 10 years of age or younger, and (3) the elements of a violation of Penal Code section 288.7, subdivision (a)[1]—are correct statements of the law.

4. The trial court erred in instructing the jury that the violation of section 288.7, subdivision (b) was a general intent crime. When that statute is violated by sexual penetration, it is a specific intent crime. However, the error was harmless beyond a reasonable doubt because the jury was also instructed with the correct elements of the crime, including specific intent. In light of the full charge to the jury and the record, we conclude no rational jury could have found the specific intent element to be unproven.

5. In the published portion of our opinion, we hold that a sentence of 15 years to life for the sexual penetration of a child 10 years of age or younger is not

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

2

cruel and/or unusual punishment. Under United States Supreme Court precedent, and in light of the serious nature of the crime, we find no error under the Eighth Amendment to the United States Constitution. We also conclude there was no error under the California Constitution, considering the nature of the offense and the offender, and the lack of disproportionality between the required sentence for violation of section 288.7, subdivision (b), and either the punishment for other crimes in California or the punishment for similar crimes in other states.

6. The trial court erred in imposing full-term consecutive sentences for defendant's two violations of section 288, subdivision (a). We will vacate these sentences and remand the matter to the trial court for resentencing on these two counts only.

7. The trial court did not err in imposing a $300 restitution fine and a $300 parole revocation fine.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

The victim lived in a one-bedroom apartment with her mother, her older brother, defendant (who was the mother's boyfriend), and two half-siblings, who were the children of the mother and defendant. Defendant was like a father to the victim. The victim's mother taught the victim to respect defendant, and defendant helped raise the victim and her brother. On numerous occasions when the victim was between three and eight years old, defendant engaged in inappropriate sexual conduct with her, including touching her under her clothes, digitally penetrating her, making the victim touch his genitals, and forcing the victim to orally copulate him.

Defendant told the victim that if she ever told anyone about the molestation, he would hurt the victim's mother. Defendant also threatened to hit the victim when she attempted to get away from him. Defendant promised to give the victim money if she would orally copulate him.

3

The victim's older brother saw defendant touch the victim's "private parts" on more than one occasion.[2] The brother heard defendant say he would kill their maternal grandmother if the victim told anyone. The brother also witnessed defendant attempt to sodomize the victim. The brother tried to push defendant away, but defendant shoved him to the ground. When the brother said he was going to tell his mother what had happened, defendant threatened to kill the mother and the maternal grandmother. On another occasion, the brother heard defendant tell the victim to touch his genitals. The victim tried to fight back by kicking defendant, but defendant grabbed her legs and put his hand over her mouth.

When the victim was seven years old, her maternal grandmother moved in with the family, and slept in the living room. The maternal grandmother witnessed several incidents that caused her to suspect that defendant was sexually abusing the victim. The maternal grandmother asked the victim if defendant was touching her, but the victim denied it. The maternal grandmother claimed that she had a photo of defendant putting his hand on the victim's leg and asked the victim to tell the truth. The victim first said that defendant did not touch her, then said he touched her leg accidentally.

The maternal grandmother told the victim's mother to talk to the victim. The victim was initially nervous and upset and was laughing; eventually she said to her mother, "I want to tell you that . . . [defendant] is touching me." The victim's mother did not contact the police. Instead, she moved the victim to the top bunk bed, promised to make sure the victim was never alone with defendant, and promised to call the police if defendant ever touched the victim again.

When the victim was eight years old, the maternal grandmother again asked whether defendant had touched her. The victim revealed that defendant had penetrated

---

[2] The brother slept on the top bunk of the bunk bed, while the victim and her half-sisters slept on the bottom bunk.

4

her with his fingers. The maternal grandmother notified someone at the victim's school, who contacted the police.

In the presence of a police officer and a social worker, the victim initially denied any molestation and denied telling her mother she had been molested. She told the police officer she did not want to talk because she was afraid defendant would hurt her or her mother. As the interview progressed, the victim confirmed she had seen defendant's penis. During the interview, the victim was shaking and crying.

The victim had two separate interviews with social workers from the Child Abuse Services Team (CAST). The victim's discussion of the acts of molestation was much more detailed during the CAST interviews than when she testified at trial.

In an information, defendant was charged with two counts of committing lewd acts on a child under 14 (§ 288, subd. (a) [counts 1 and 3]), one count of forcibly committing a lewd act on a child under 14 (§ 288, subd. (b)(1) [count 2]), and one count of sexual penetration with a child 10 years of age or younger (§ 288.7, subd. (b) [count 4]). Following a jury trial, defendant was convicted of all counts.

The trial court sentenced defendant to a term of 35 years to life: an indeterminate term of 15 years to life on count 4, plus consecutive determinate terms of eight years on count 2, and six years each on counts 1 and 3. The trial court also ordered defendant to pay a $300 restitution fine (§ 1202.4), and a $300 parole restitution fine (§ 1202.45). Defendant timely filed a notice of appeal.

DISCUSSION

I.

*PROSECUTORIAL MISCONDUCT*

A.

*Standard of Review*

"Advocates are given significant leeway in discussing the legal and factual merits of a case during argument. [Citation.] However, 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its . . . obligation to overcome reasonable doubt on all elements [citation].' [Citations.] To establish such error, bad faith on the prosecutor's part is not required." (*People v. Centeno* (2014) 60 Cal.4th 659, 666.)

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (*People v. Centeno, supra,* 60 Cal.4th at p. 667.)

B.

*The Challenged Argument*

During rebuttal, the prosecutor argued:

"A man walks into a bank with a gun, he's wearing all black; black hat, black sunglasses, black shirt, black pants. Do you remember that story?

"Why did I tell you that story? Is it possible that man just so happened to be wearing black because his whites and colors were in the laundry room? Possible.

"Is it possible he was wearing a hat and sunglasses because it was sunny outside?  Possible.

"Is it possible he had a gun because he went shooting and totally forg[o]t about it?  Possible.

"But is it reasonably beyond doubt that he wasn't robbing the bank?  He was robbing the bank.  You put all those things together, and beyond a reasonable doubt he was robbing that bank.

"Nothing is beyond all possible doubt.  CALCRIM 220.  Beyond a reasonable doubt simply means that it does not have to eliminate all possible doubt, because everything in life is open to some possible or imaginary doubt.

"When we first met I told you I was looking for fair and impartial jurors. I wholeheartedly meant it.  But I was looking for one more thing.  I was looking for jurors with enough life experience, common sense and courage to listen to the defense[']s version and say exactly what my father would have said.  Son, I wasn't born yesterday.

"Listen to what the defense said.  This was the grandmother.  Grandmother was this mastermind.  Somehow this grandmother knew that she didn't like her daughter's new boyfriend, and she knew that if she just implanted into this child's head that this child will say it, tell her brother, and that her brother would repeat it, and that they would all just fabricate everything.

"And then this grandmother knew that this child would then go to her mother and say something.  And this grandmother knew that if she went to, not the police, to the school, the school would report, and the police would come and investigate, and the defendant would get arrested and we'd be here today.  The grandmother. Possible? Possible.  But is it beyond reasonable doubt? No.  [¶] . . . [¶]

"No.  You saw the grandmother testify.  That was not—that did not give you reasonable doubt.  Either that man with the gun was robbing the bank, or he is the most unfortunate soul, and the universe conspired against him for him to be . . . guilty.

7

"Either the defendant is guilty beyond a reasonable doubt or this woman was the most brilliant woman we've ever seen, and somehow all the stars aligned and caused the defendant to be here.  That is not beyond a reasonable doubt."[3]  Defendant's trial counsel objected to the rebuttal argument on the ground the prosecutor was "burden shifting."  The trial court overruled the objection.  The prosecutor then told the jury: "Now, the defense in their case, and I want to be clear, there is no obligation by the defense to put on any case. . . . *They have no burden.  The burden is mine.*"  (Italics added.)

## C.

### *Analysis*

It is "error to state that 'a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence.'  [Citations.]  It is, and remains, the prosecutor's burden to prove the case.  If the defense chooses to produce evidence, the jury must, of course, consider it as part of the complete record before it.  To that end, the prosecution can surely point out that interpretations proffered by the defense are neither reasonable nor credible.  Nevertheless, even if the jury rejects the defense evidence as unreasonable or unbelievable, that conclusion does not relieve or mitigate the prosecutorial burden.  The prosecution cannot suggest that deficiencies in the defense case can make up for shortcomings in its own."  (*People v. Centeno, supra,* 60 Cal.4th at p. 673.)

---

[3]  The prosecutor's rebuttal argument was responding to an argument by defendant's trial counsel that the accusations against defendant were the result of the maternal grandmother's "daily barrage of questions" to the victim about the alleged abuse.  According to defendant's trial counsel, the maternal grandmother continued to ask the victim if defendant had touched her, and only stopped doing so after the victim said "yes."

8

The prosecutor may make fair comment on the state of the evidence, including the absence of evidence to which the defense has alluded. (*People v. Cook* (2006) 39 Cal.4th 566, 608.) In *People v. Cook,* the defendant theorized that different guns had been used to kill two victims. The prosecutor raised the lack of any evidence regarding a second gun during closing argument. (*Id.* at p. 607.) Both the trial court and the prosecutor reminded the jury that the prosecutor had the burden of proof after the defense argued the prosecutor was "burden shifting." (*Id.* at pp. 607-608.) The appellate court concluded the "argument constituted fair comment on the absence of evidence of a second gun," and the prosecutor's comment that the defense attorney was "creat[ing] smoke" was "a metaphor that, while clearly dismissive of the defense's theory, did not improperly impugn the integrity of defense counsel." (*Id.* at p. 608.)

The California Supreme Court concluded: "Because there was neither burden shifting nor misconduct by the prosecutor, defendant has not established prejudice justifying reversal under the state law test requiring a reasonable likelihood of a more favorable verdict in the absence of the challenged conduct. [Citations.] Even if we were to conclude that these instances constituted error, which we do not, applying the test pertaining to error of federal constitutional dimension, we conclude that the prosecutor's comments and questioning were harmless beyond a reasonable doubt." (*People v. Cook, supra,* 39 Cal.4th at p. 608.)

Here, too, the prosecutor acknowledged having the burden of proof. We have reviewed both the defense argument and the prosecutor's closing argument, as well as the full trial testimony. We conclude that the jury would reasonably have heard the prosecutor as arguing that it had proven the case against defendant beyond a reasonable doubt, and that the defense argument that the victim's maternal grandmother had badgered the victim into accusing defendant was not reasonable.

9

## II.

### THE TRIAL COURT DID NOT ERR IN ADMITTING EVIDENCE OF CHILD SEXUAL ABUSE ACCOMMODATION SYNDROME.

### A.

### *Dr. Ward's Testimony*

The prosecution presented the testimony of Dr. Jody Ward, a clinical and forensic psychologist, regarding CSAAS. Ward defined CSAAS as "a pattern of behaviors that many children exhibit who have been sexually abused. Not all children exhibit all of these behaviors, but many do. And it helps us as therapists, as lay people to really, just as adults, to understand why children do what they do in response to sexual abuse. Because many times it's counterintuitive or not what we would expect." Ward explained the five characteristic behaviors of sexually abused children (secrecy, helplessness, entrapment and accommodation, delayed unconvincing disclosure, and retraction or recantation). Ward had not reviewed any of the police reports or CAST videos, and had not spoken to any of the witnesses in this case, including but not limited to the victim.

Ward expressed no opinion as to whether the victim had been sexually abused, was lying, or had false or planted memories of alleged abuse. She testified that CSAAS cannot be used to diagnose whether abuse has occurred. If abuse has occurred, then CSAAS can be helpful in understanding the child's reactions.

### B.

### *Analysis*

Defendant argues that the trial court erred in admitting Ward's testimony because it failed to "properly perform its gatekeeper role in ascertaining the reliability and scientific foundation for the purported expert testimony offered by the prosecution."

10

We note initially that defendant did not object to Ward's testimony, and did not request that the trial court conduct a hearing as to the admissibility of the testimony. Defendant contends his argument is not forfeited because his trial counsel reasonably could have concluded it would be futile to object under the law in effect at the time. The cases cited by defendant stand for the proposition that the failure to object at trial does not preclude an argument on appeal based on an intervening change in the law. (*O'Connor v. Ohio* (1966) 385 U.S. 92, 93 [defendant's claim not barred when U.S. Supreme Court issued new rule of law after defendant's trial]; *People v. Chavez* (1980) 26 Cal.3d 334, 350, fn. 5 [failure to object at trial excused ""'where to require defense counsel to raise an objection 'would place an unreasonable burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule of evidence would be changed on appeal''"""]; *People v. DeSantiago* (1969) 71 Cal.2d 18, 22-23 [failure to object at trial excused where the objection "would have been wholly without support in the law as it stood at the time of trial"].)

No intervening change in law is present here. To the contrary, as defendant notes in his opening appellate brief, California courts have admitted evidence of many types of "victim profile evidence," including but not limited to evidence of CSAAS. Defendant has forfeited this issue on appeal.

Even if we were to address the issue, we would conclude there was no prejudicial error. Defendant argues the CSAAS evidence should have been excluded because it does not meet the requirements of the *Kelly/Daubert* test for scientific evidence. (See *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) 509 U.S. 579, 589; *People v. Kelly* (1976) 17 Cal.3d 24, 31.) Defendant further argues that the trial court failed its gatekeeping duty by not determining whether Ward's testimony regarding CSAAS was based on matters on which an expert witness may reasonably rely. Here, the bases of the expert testimony were well established and not based on speculation and

11

conjecture. Therefore, the trial court did not err. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770-771.)

The *Kelly/Daubert* rule conditions the admissibility of evidence based on a new scientific method on a showing that the method is generally accepted as reliable in the relevant scientific community. (*People v. Shirley* (1982) 31 Cal.3d 18, 34.) Reliability of the evidence is established by showing that the method has gained general acceptance in the relevant scientific community. (*Kelly, supra*, 17 Cal.3d at p. 30.) The *Kelly/Daubert* rule applies only to expert testimony "based, in whole or part, on a technique, process, or theory which is new to science, and, even more so, the law." (*People v. Stoll* (1989) 49 Cal.3d 1136, 1156.) The *Kelly/Daubert* rule applies only if "the unproven technique or procedure appears in both name and description to provide some definitive truth which the expert need only accurately recognize and relay to the jury. The most obvious examples are machines or procedures which analyze physical data." (*Ibid.*)

The theory of CSAAS is not new, but dates back at least to 1983 when it was described in Summit, *The Child Sexual Abuse Accommodation Syndrome* (1983) 7 Internat. J. of Child Abuse & Neglect 177. (See *People v. Bowker* (1988) 203 Cal.App.3d 385, 389, fn. 3.) Nor does CSAAS testimony purport to provide "definitive truth"; rather CSAAS testimony attempts to disabuse laypersons of misconceptions they might have about the conduct of children who have been sexually abused. As such, CSAAS testimony, if properly limited, is not "scientific evidence" subject to the conditions of the *Kelly/Daubert* rule.

In *People v. Harlan* (1990) 222 Cal.App.3d 439, 448-450, the Court of Appeal concluded that CSAAS is not scientific evidence subject to the *Kelly/Daubert* rule. The court explained that CSAAS is not based upon a new scientific method but upon clinical experience with child abuse victims and the professional literature which evaluates the reactions of such victims. A line of cases has followed suit in holding that

12

CSAAS evidence is admissible when offered to show that the victim did not act inconsistently with abuse, to dispel common misperceptions about a child's reaction to abuse, or to rebut a defendant's attack on the victim's credibility. (*People v. Mateo* (2016) 243 Cal.App.4th 1063, 1069; *People v. Perez* (2010) 182 Cal.App.4th 231, 245; *People v. Patino* (1994) 26 Cal.App.4th 1737, 1744-1745; *People v. Housley* (1992) 6 Cal.App.4th 947, 956; *People v. Bowker, supra*, 203 Cal.App.3d at pp. 393-394; *People v. Gray* (1986) 187 Cal.App.3d 213, 218-220.) "Although inadmissible to prove that a molestation occurred, CSAAS testimony has been held admissible for the limited purpose of disabusing a jury of misconceptions it might hold about how a child reacts to a molestation." (*Patino, supra*, 26 Cal.App.4th at p. 1744.)

It is well established that CSAAS "evidence is admissible *solely* for the purpose of showing that the victim's reactions as demonstrated by the evidence are not inconsistent with having been molested." (*People v. Bowker, supra*, 203 Cal.App.3d at p. 394; see *People v. Wells* (2004) 118 Cal.App.4th 179, 188.) Our Supreme Court has acknowledged that this type of evidence, if offered for this purpose, is admissible. (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1088 [evidence of battered women's syndrome]; *People v. McAlpin* (1991) 53 Cal.3d 1289, 1300-1301 [evidence regarding parental reluctance to report child molestation].)[4]

CSAAS evidence is not admissible to establish that the victim in a particular case was in fact molested. (*People v. Gonzales* (2017) 16 Cal.App.5th 494, 503.) To guard against the risk that a jury might improperly view CSAAS as proof of a defendant's guilt, the jury must be instructed that "the expert's testimony is not intended and should not be used to determine whether the victim's molestation claim is true."

---

[4] The cases defendant cites from other states that have held CSAAS evidence inadmissible are inconsistent with the California cases admitting CSAAS evidence.

(*People v. Bowker, supra*, 203 Cal.App.3d at p. 394.)  The jury in this case was so instructed.

And even if the CSAAS evidence had been erroneously admitted, reversal would be warranted only if we were to conclude that it is reasonably probable the jury would have reached a different result had the evidence been excluded.  (*People v. Scheid* (1997) 16 Cal.4th 1, 21; *People v. Watson* (1956) 46 Cal.2d 818, 836.)  In this case, the victim's testimony was substantial evidence of the various acts of sexual abuse with which defendant was charged.  The possibility that the jury might have viewed Ward's testimony as corroboration of the victim's testimony, rather than an explanation of the victim's behavior, was very low.  Ward testified that CSAAS could not be used to diagnose whether sexual abuse had occurred, and the instruction limited the jury's consideration of Ward's testimony.  Accordingly, if we were to consider this issue on its merits, we would conclude there was no prejudicial error.

## III.

### INSTRUCTIONAL ERROR

The correctness of the jury instructions is determined by considering the entire charge of the court, and not one instruction or one part of an instruction.  (*People v. Bolin* (1998) 18 Cal.4th 297, 328; *People v. Saavedra* (2018) 24 Cal.App.5th 605, 614.)

### A.

### *CALCRIM No. 1193*

Defendant argues that the trial court erred by instructing the jury that Ward's testimony regarding CSAAS could be used in judging the victim's credibility. The court instructed the jury with CALCRIM No. 1193 as follows:  "You have heard testimony from Dr. Jody Ward regarding child sexual abuse accommodation syndrome. [¶] Dr. Jody Ward's testimony about child sexual abuse accommodation syndrome is not

14

evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not [the victim's] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony."

Defendant's argument regarding CALCRIM No. 1193 was recently rejected by *People v. Gonzales, supra,* 16 Cal.App.5th 494. "Gonzales argues the instruction is inconsistent. It states that the CSAAS testimony is not evidence the defendant committed the charged crimes, and also that the jury may use the evidence in evaluating the believability of [the victim]'s testimony. Gonzales argues it is impossible to use the CSAAS testimony to evaluate the believability of [the victim]'s testimony without using it as proof that Gonzales committed the charged crimes. [¶] But the instruction must be understood in the context of [the expert]'s testimony. [The expert] testified that CSAAS is not a tool to help diagnose whether a child has actually been abused. She said that if it is not known whether a child has been abused, CSAAS is not helpful in determining whether a child has, in fact, been abused. The purpose of CSAAS is to understand a child's reactions when they have been abused. [¶] A reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [the expert]'s testimony to conclude that [the victim]'s behavior does not mean she lied when she said she was abused. The jury also would understand it cannot use [the expert]'s testimony to conclude [the victim] was, in fact, molested. The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior. Thus, under CALCRIM No. 1193, a juror who believes [the expert]'s testimony will find both that [the victim]'s apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested. There is no conflict in the instruction." (*Id.* at pp. 503-504.)

In *People v. Gonzales, supra,* 16 Cal.App.5th at page 504, the court stated that "the jury can use [the expert]'s testimony to conclude that [the victim]'s behavior

15

does not mean she lied when she said she was abused"; defendant argues that "if the CSAAS testimony is used to conclude that the complaining witness did not lie then it is necessarily being considered in support of that witness's charge of molestation." There is a difference between saying you can use the evidence to conclude the witness did not lie, and saying you can use the evidence to conclude that the witness's self-impeaching behavior does not mean she lied. The *People v. Gonzales* court gave as examples of such self-impeaching behaviors: the child still wanting comfort from the abuser and acting loving and trusting toward him; failing to cry out for help; trying to forget about the abuse; and failing to remember each incident or the precise details of each incident. (*Id.* at p. 499.)

## B.

### *CALCRIM No. 330*

Defendant argues that the trial court erred by instructing the jury with CALCRIM No. 330, regarding the testimony of a child 10 years of age or younger, claiming that instruction gave undue weight and emphasis to the victim's testimony. The court instructed the jury as follows: "You have heard testimony from a child who is under the age of 10 or younger. As with any witness you must decide whether the child gave truthful and accurate testimony. In evaluating the child's testimony you should consider all of the factors surrounding the testimony including the child's age and level of cognitive development. [¶] When you evaluate the child's cognitive development consider the child's ability to perceive, understand, remember and communicate. [¶] . . . While a child and an adult witness may behave differently that difference does not mean one is more or less believable than the other. You should not discount or distrust the testimony of a witness just because he or she is a child."

CALCRIM No. 330 is a correct statement of the law (see § 1127f [requiring an instruction using this language upon request]), and defendant's failure to object to it in

16

the trial court forfeited the issue on appeal (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 559). Even if we were to consider the issue, we would conclude that the trial court did not err by instructing the jury with CALCRIM No. 330.

As defendant concedes, numerous courts have concluded that CALCRIM No. 330 and its predecessor, CALJIC No. 2.20.1, are legally correct and do not violate a defendant's constitutional rights. "CALCRIM No. 330 simply instructs the jury to take into account a child's ability to perceive, understand, remember and communicate when making a credibility determination. It does not instruct the jury to subject a child's testimony to a less rigorous credibility determination, nor does it excessively inflate a child witness's credibility." (*People v. Fernandez, supra,* 216 Cal.App.4th at p. 560; see *People v. McCoy* (2005) 133 Cal.App.4th 974, 979-980; *People v. Jones* (1992) 10 Cal.App.4th 1566, 1572-1574; *People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1393; *People v. Harlan* (1990) 222 Cal.App.3d 439, 455-457.) We reject defendant's request to conclude all of these cases were wrongly decided.

## C.

### *CALCRIM No. 1128*

Defendant argues the trial court erred by failing to instruct the jury regarding the specific intent required for the violation of section 288.7, subdivision (b). The trial court instructed the jury with CALCRIM No. 1128 as follows: "The defendant is charged in Count 4 with Engaging in Oral Copulation or Sexual Penetration with a Child 10 Years of Age or Younger in violation of Penal Code section 288.7(b). [¶] . . . [¶] To prove that the defendant is guilty of the crime of Engaging in Oral Copulation or Sexual Penetration with a Child 10 Years of Age or Younger, the People must prove that: [¶] 1. The defendant engaged in an act of oral copulation or sexual penetration with [the victim]; [¶] 2. When the defendant did so, [the victim] was 10 years of age or younger; [¶] 3. At the time of the act, the defendant was at least 18 years old.

17

[¶] . . . [¶] Sexual penetration means penetration, however slight, of the genital or anal opening of the other person or causing the other person to penetrate, however slightly, the defendant's or someone else's genital or anal opening or causing the other person to penetrate, however slightly, his or her own genital or anal opening by any foreign object, substance, instrument, device, or any unknown object for the purpose of sexual abuse, arousal, or gratification."

In *People v. Ngo* (2014) 225 Cal.App.4th 126, 162, the appellate court concluded the trial court "set[] forth the required specific intent" by instructing the jury with CALCRIM No. 1128, which used the phrase "for the purpose of sexual arousal, gratification, or abuse." (See *People v. Saavedra, supra,* 24 Cal.App.5th at p. 615 [CALCRIM No. 1128 correctly sets out the elements, including intent, for sexual penetration of a child].) CALCRIM No. 1128 sets forth the required specific intent for the crime; there was no error.

D.

*Inclusion of Sexual Penetration as a General Intent Crime*
*in CALCRIM No. 252*

Defendant argues the trial court erred in instructing the jury that sexual penetration with a child 10 years of age or younger, as charged in count 4, was a general intent crime. The trial court instructed the jury with CALCRIM No. 252 on the prosecution's need to prove a union of act and intent. The court correctly instructed the jury that the crimes charged in counts 1, 2, and 3 were specific intent crimes, but erroneously instructed the jury that count 4 was a general intent crime.

Section 288.7, subdivision (b) imposes punishment on "[a]ny person 18 years of age or older who engages in oral copulation or sexual penetration, as defined in Section 289, with a child who is 10 years of age or younger." While section 288.7, subdivision (b) is a general intent crime when violated by committing oral copulation

18

(*People v. Saavedra, supra,* 24 Cal.App.5th at p. 613), it is a specific intent crime when violated by committing sexual penetration (*People v. Ngo, supra,* 225 Cal.App.4th at p. 157). In this case, defendant was accused of violating section 288.7, subdivision (b) by committing sexual penetration of the victim when she was 10 years of age or younger.

This instructional error, however, was not prejudicial. The recently decided case of *People v. Saavedra, supra,* 24 Cal.App.5th 605 is procedurally indistinguishable from the present case. In *People v. Saavedra*, the defendant was charged with, among other things, violation of section 288.7, subdivision (b), based on sexual penetration. With regard to intent, the trial court instructed the jury with CALCRIM Nos. 252 and 1128. (*People v. Saavedra, supra,* pp. 612-613, 614-615.) The appellate court concluded the trial court had erred in instructing with CALCRIM No. 252. "Defendant correctly contends the instruction was erroneous with respect to count 11, which was based on defendant's penetration of [the victim]'s vagina with his finger. When based on oral copulation of a child, a violation of section 288.7, subdivision (b) is indeed a general intent crime. [Citations.] However, when, as in count 11, the violation of the statute is based on sexual penetration, it is a specific intent crime. [Citations.] . . . [¶] 'The trial court must instruct even without request on the general principles of law relevant to and governing the case. [Citation.] That obligation includes instructions on all of the elements of a charged offense. [Citation.]' [Citation.] . . . Thus, a trial court is obligated to give a correct instruction on the concurrence of act and specific intent whenever the offense charged is a specific intent crime." (*People v. Saavedra, supra,* 24 Cal.App.5th at pp. 613-614, fn. omitted.)

The appellate court in *People v. Saavedra* concluded the error was nevertheless harmless beyond a reasonable doubt based on the giving of CALCRIM No. 1128 and the record on appeal. "As we previously observed, CALCRIM No. 1128 correctly set out the elements—including the intent—required for the jury to convict defendant of sexual penetration of a child 10 years of age or younger, as charged in

19

count 11.  The language of the instruction covered both the requisite intent per se and the requirement of a concurrence of act and specific intent.  The record on appeal—which we have carefully reviewed—contains no evidence that could rationally lead to a finding the act of penetration charged in count 11 was committed for a purpose other than sexual arousal, gratification, or abuse.  Moreover, defendant did not contest the element, but rather denied any culpability.  Since no rational jury could have found the specific intent element unproven, the error was harmless beyond a reasonable doubt." (*People v. Saavedra, supra,* 24 Cal.App.5th at pp. 615-616, fn. omitted.)

Here, the trial court instructed the jury with CALCRIM No. 1128.  As discussed *ante*, this instruction correctly sets forth the elements of a violation of section 288.7, subdivision (b), including but not limited to specific intent.  Like *People v. Saavedra*, the record here would not permit a finding that defendant committed the acts of digital penetration for any purpose other than sexual arousal, gratification, or abuse.  Defendant did not challenge the intent element as part of his defense, but simply denied the acts of molestation had occurred.  The instructional error was harmless beyond a reasonable doubt because the jury could not have found the required intent had not been proven.

IV.

*SENTENCING ISSUES*

A.

*Is the Life Sentence on the Section 288.7, Subdivision (b) Count Cruel and/or Unusual?*

Defendant was sentenced to 15 years to life on count 4, for the sexual penetration of a child 10 years of age or younger.  Defendant contends on appeal that this sentence constitutes cruel and/or unusual punishment because it is disproportionate to his criminal culpability and criminal history and to punishments for other crimes in California and for similar crimes in other states.  In this case of first impression, we hold

20

that defendant's sentence of 15 years to life on count 4 for sexual penetration of a child 10 years of age or younger is constitutional.

Special laws on the subject of sexual abuse of children have been enacted describing the types of acts that may be deemed criminal sexual misconduct. These laws "generally operate without regard to force, fear, or consent." (*People v. Reyes* (2016) 246 Cal.App.4th 62, 85.) The act of setting prison terms for specific crimes "involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts.'" (*Harmelin v. Michigan* (1991) 501 U.S. 957, 998.) When considering a claim that a particular sentence amounts to cruel and unusual punishment, we give substantial deference both to the Legislature's broad authority to determine the parameters for the punishments for crimes, and to the trial court's discretion in imposing specific sentences. (*Solem v. Helm* (1983) 463 U.S. 277, 290.) "Whether a punishment is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts must be viewed in the light most favorable to the judgment." (*People v. Martinez* (1999) 76 Cal.App.4th 489, 496.)

The federal Constitution prohibits imposition of punishment that is "cruel and unusual." (U.S. Const., 8th Amend.; see *Robinson v. State of California* (1962) 370 U.S. 660, 666-667.) The United States Supreme Court has concluded that neither a 25-years-to-life sentence for stealing three golf clubs nor a 50-years-to-life sentence for stealing videotapes valued at $153 constitutes cruel and unusual punishment. (*Ewing v. California* (2003) 538 U.S. 11, 30-31; *Lockyer v. Andrade* (2003) 538 U.S. 63, 77.) In the present case, by contrast, defendant committed acts of sexual molestation against a very young child—with whom he had the equivalent of a parent/child relationship—to satisfy his own sexual desires. Given the United States Supreme Court precedent and the nature of defendant's crimes, we conclude the sentence imposed did not constitute cruel and unusual punishment under the Eighth Amendment.

Our state Constitution provides: "Cruel or unusual punishment may not be inflicted or excessive fines imposed." (Cal. Const., art. I, § 17.) A sentence may be cruel or unusual if it is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.) "The main technique of analysis under California law is to consider the nature both of the offense and of the offender." (*People v. Martinez, supra,* 76 Cal.App.4th at p. 494, citing *People v. Dillon* (1983) 34 Cal.3d 441, 479.)

In examining the nature of the offense, we "'look at the totality of the circumstances, including motive, the way the crime was committed, the extent of the defendant's involvement, and the consequences of defendant's acts.'" (*People v. Reyes, supra,* 246 Cal.App.4th at p. 87.) In examining the nature of the offender, we consider "'whether "the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind."'" (*Ibid.*)

We quote from the trial court's comments at the sentencing hearing regarding both of these criteria:

"[T]he court does find that pursuant to [California Rules of Court, rule] 4.421(a) the crime did involve great bodily injury harm as well as the threat of future and further great bodily harm and a high degree of cruelty, and viciousness and callousness.

"He did threaten that he was going to hurt [her] or her brother if they told; that he was going to beat their mother if they told. And he molested her from the time she was little until she grew older with the progression of molestation activities that became more and more aggressive.

"She would kick him. He would contain her legs. He was much larger and so, you know, his progress at this was extremely disturbing for her and for her family.

"Under [rule] 4.421(a)(8) the manner in which it was carried out did indicate some amount of planning in that they all lived in the same house. There wasn't a

22

lot of privacy in the house. But he would make sure that he had access to her when her mother was gone and when the grandmother was not around so no one could see what was happening.

"It was only when the [grandmother walked] in and saw his hand on her leg and he moved it quickly that suspicion really arose to a different level, and the grandmother finally took all these fact[s] to the school because she didn't trust that her daughter would do the right thing and leave him, because there had already been things going on in the house, according to her, in that there was evidence from both I believe from grandma, and from the victim, that the defendant was actually striking the mother as well, none of which was charged, but certainly played into whether or not someone [would] report this particular crime.

"Pursuant to [rule] 4.421(a)(3) the victim, compare[d] to other victims, was really vulnerable. She was a little girl who lived in a house with him. She was alone. Physically, he was much larger, and she was too young to be able to fend him off or to even understand or be successful in escaping. She was afraid that everyone would be hurt who she loved if she were to tell, and she pretty much was isolated.

"Pursuant to rule 4.421(a)(11) the defendant did take advantage of a position of trust. He was the one who was suppose[d] to care for her and keep her safe when mother was at work, and unfortunately took advantage of that situation and he violated the trust that her mother had placed in him, and that she probably had in him to keep her safe.

"The factors in mitigation with a regard to the actions are none, but that factors in mitigation as to his background are that he has no criminal background that the court is aware of, so he has that in his benefit which is why the court is not giving an aggravated term."

Defendant, an adult, was in the position of a father figure to the victim, who was a child of very tender years when the molestation began. Defendant used the trust

placed in him by the victim's mother, his physical dominance over the victim, and fear instilled by threats of harm to the victim and her family members to commit these crimes. Defendant had a very limited criminal record,[5] his defense expert testified that defendant did not suffer from paraphilia, and witnesses on behalf of defendant testified he was honest and did not have a reputation for being "vulgar" with children. On the whole, however, the nature of the offender and the nature of the offense do not establish that the punishment was grossly disproportionate to the crime committed.

No disproportionality is demonstrated either by comparing defendant's punishment to punishments for other crimes in this state, or by comparing defendant's punishment to punishments for similar crimes in other states. Defendant notes that the 15-years-to-life sentence for violation of section 288.7, subdivision (b) is equal to that imposed for second degree murder, and is greater than the sentences imposed for first degree robbery, forcible rape, or forcible sodomy. It is well within the prerogative of the Legislature to determine that sex offenses against young children are deserving of longer sentences than sex offenses against adults or non-sex offenses. "'Punishment is not cruel or unusual merely because the Legislature may have chosen to permit a lesser punishment for another crime. Leniency as to one charge does not transform a reasonable punishment into one that is cruel or unusual.'" (*People v. Baker* (2018) 20 Cal.App.5th 711, 727.)

Defendant presents the sentence ranges for sexual penetration with a minor from 10 other states. Defendant posits that because six of those jurisdictions give the sentencing court discretion to sentence a defendant to a determinate term, his term of 15 years to life is constitutionally infirm. We read defendant's survey differently. One of the jurisdictions cited (Florida) permits a sentence of life without the possibility of

---

[5] Defendant's previous arrests were for leaving the scene of an accident involving property damage (Veh. Code, § 20002, subd. (a)); driving without a license (*id.*, § 12500, subd. (a)); making an unsafe turn (*id.*, § 22107); and disorderly conduct (§ 647, subd. (f)).

parole. Three others (Kansas, Nevada, and Ohio) permit a term of years to life, where the term of years is at least as long as that imposed here. Thus, several other jurisdictions permit equivalent or harsher punishment for the equivalent crime. The punishment prescribed for violation of section 288.7, subdivision (b) does not shock the conscience.

Therefore, we conclude that the 15-years-to-life sentence imposed on defendant for violating section 288.7, subdivision (b) is not cruel and/or unusual punishment.

## B.

*The Full-Term Consecutive Sentences on Counts 1 and 3 Were Not Authorized.*

Defendant argues, and the Attorney General concedes, that the trial court erred in imposing sentence on counts 1 and 3. The trial court imposed a full, consecutive middle term of six years on each of these counts.

Section 667.6, subdivision (d) requires that a "full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions." Section 288, subdivision (a) (of which defendant was convicted in counts 1 and 3) is not listed in section 667.6, subdivision (e), however. (*People v. Cardenas* (1994) 21 Cal.App.4th 927, 930 [§ 667.6 does not apply to convictions under § 288, subd. (a)].) The sentence on these counts was unauthorized, and we will vacate the sentences and remand for resentencing.

## C.

*The $300 Restitution Fine and the $300 Parole Revocation Fine Were Authorized.*

At sentencing, the trial court imposed a restitution fine of $300, and a parole revocation fine of $300.

25

From January 1, 2012 to December 31, 2012, the minimum restitution fine for a person convicted of a felony was $240; from January 1, 2013 to December 31, 2013, the minimum restitution fine was $280; and since January 1, 2014, the minimum restitution fine has been $300. (Former § 1202.4, subd. (b)(1), as amended by Stats. 2012, ch. 868, § 3.) Section 1202.45, subdivision (a) provides that the parole revocation fine must be imposed in the same amount as the restitution fine.

Defendant argues the restitution and parole revocation fines should be reduced to $240 because that was the minimum applicable fine at the time defendant's crimes were committed. We reject defendant's argument for two reasons.

First, the evidence at trial supported a finding that the crimes were committed both before and after January 1, 2014, making the $300 minimum fine appropriate.

Second, even before January 1, 2014, a $300 fine was permissible; $240 was merely the *minimum* amount of the fine. Because the fine was part of permissible sentence, to which defendant did not object, he has forfeited the issue on appeal. (*People v. Martinez* (2014) 226 Cal.App.4th 1169, 1189; *People v. Turrin* (2009) 176 Cal.App.4th 1200, 1207.)

V.

*INEFFECTIVE ASSISTANCE OF COUNSEL*

Finally, defendant argues that if this court determines that any of the foregoing alleged errors were forfeited, we should consider whether defendant received ineffective assistance from his trial counsel. As detailed *ante*, in the instances where we determined that defendant had forfeited an issue by failing to raise it in the trial court, we have nevertheless considered the matter on its merits and concluded there was no prejudicial error.

26

The sentences on counts 1 and 3 are vacated. The matter is remanded to the trial court for resentencing on counts 1 and 3. The judgment is affirmed in all other respects.

FYBEL, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

THOMPSON, J.