Filed 11/16/21  P. v. Espino CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>JOSE ALFREDO ESPINO,<br><br>    Defendant and Appellant. | G058083<br><br>(Super. Ct. No. 17NF1952)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Cheri T. Pham, Judge.  Affirmed.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

## INTRODUCTION

Defendant Jose Alfredo Espino appeals from the judgment of conviction after a jury found him guilty of several counts arising from his molestation of his two young daughters J. and Y. The jury also found true attendant multiple victims sentencing enhancement allegations. We reject Espino's contentions of error and affirm the judgment of conviction.

Substantial evidence supports his convictions on two counts of committing a lewd or lascivious act against J.; defendant does not challenge the sufficiency of the evidence supporting his convictions for crimes committed against Y. Sufficient evidence, therefore, also supports the jury's true finding on the multiple victims sentencing enhancement allegations. Espino's contentions of evidentiary and instructional error regarding evidence pertaining to the Child Sexual Abuse Accommodation Syndrome (CSAAS) are also without merit.

## FACTS[1]

In July 2017, Espino lived with his girlfriend N., Espino's children with N., N.'s daughter, and Espino's former romantic partner M., and Espino and M.'s two daughters, nine-year-old Y. and eight-year-old J., and their seven-year-old son, Jo. On July 18, 2017, Espino was home alone with Y., J., Jo., and another one of Espino's children. Espino locked himself in the bedroom with Y., picked her up, placed her on the bed face down, removed her clothing, and placed his penis between her buttocks. Y. screamed for help and J. and Jo. tried to open the door. After Jo. successfully opened the door, Espino closed the door, striking Jo., locked the door, and continued his sexual assault of Y. Espino told Y. to be quiet because "'the cops are going to come.'"

---

[1] The summary of facts is limited to those relevant to the issues presented in this appeal.

The next day, Y. told her mother M. what Espino had done. M. took Y. to the police station where she was interviewed by a police officer. Y. told the officer about the incident in the bedroom, and stated that Espino had previously sexually assaulted her in a similar way about nine to ten times. She told the officer that on one occasion, defendant had laid on top of her.

At trial, Y. testified about the incident in the bedroom and also testified that on one occasion, she was sitting inside the car with Espino and Jo. when Espino "started doing stuff [she] didn't like." Espino told her to sit on his lap, he pulled down his pants, and placed his penis in her buttocks. When N. appeared and started to walk toward the car, Espino quickly pulled their clothes back into place.

J. was also interviewed at the police station on July 19, 2017. She told the interviewing police officer that defendant had placed his penis in her buttocks and that had happened to her about five times.

During her Child Abuse Services Team (CAST) interview, J. talked about the day Espino locked Y. in the bedroom with him and then told the interviewer that Espino had done "that to [her] too." The interviewer asked her to explain what had happened to her. As she previously had told the police officer, J. stated that on one occasion, Espino asked her to lay down in front of him, covered her with a blanket and then "put his private on [her] butt" and "the next day he did it to Y[.]" She told the interviewer he did that more than one time; the first time she was in first grade and she was eight years old. She also described an occasion when J. gave Espino a massage and then he gave her a massage, pulled her pants and underwear down, and continued to massage her while on top of her.

At trial, J. testified that Espino did "inappropriate things" to her two times inside their home but she did not remember those two times except to state that they were wearing their clothes. She also testified that she was with Y. during those incidents.

3

# PROCEDURAL HISTORY

Espino was charged in an amended information with one count of sexual intercourse or sodomy with a child 10 years of age or younger in violation of Penal Code section 288.7, subdivision (a) (count 1),[2] one count of committing a forcible lewd act on a child under 14 years of age in violation of section 288, subdivision (b)(1) (count 2), and three counts of committing a lewd act upon a child under 14 years of age in violation of section 288, subdivision (a) (section 288(a)) (counts 3, 4, and 5). Counts 1, 2, and 3 were alleged to have been committed against Y. and counts 4 and 5 were alleged to have been committed against J. The information further alleged as to counts 2 through 5 that (1) pursuant to section 667.61, subdivisions (b) and (e)(4), Espino committed those offenses against more than one victim, and (2) pursuant to section 1203.66, subdivision (a)(8), he had substantial sexual conduct with two victims who were under 14 years of age.

The jury found Espino guilty on all counts and found all sentencing enhancement allegations true. The trial court sentenced Espino to a 70-years-to-life prison term. Espino appealed.

# DISCUSSION

## I.

### SUFFICIENCY OF THE EVIDENCE

Espino contends insufficient evidence supports his convictions for committing lewd and lascivious acts in violation of section 288(a) against J. as charged in counts 4 and 5. He argues because insufficient evidence supports those counts, insufficient evidence supports the jury's true findings on the multiple victims sentencing enhancement allegations. Espino's arguments are without merit.

---

[2] All further undesignated statutory references are to the Penal Code.

4

## A.

### *Standard of Review and Section 288(a)*

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.] . . .  We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]  A reviewing court neither reweighs evidence nor reevaluates a witness's credibility."  (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)  The testimony of a single witness, unless physically impossible or inherently improbable, is sufficient to support a conviction.  (Evid. Code, § 411; *People v. Jones* (2013) 57 Cal.4th 899, 963.)

Section 288(a) provides:  "Except as provided in subdivision (i), a person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

## B.

### *Substantial Evidence Supports the Jury's Verdicts on Counts 4 and 5*

Substantial evidence presented at trial, including J.'s July 19, 2017 statements to the police officer at the police station, her statements during her CAST

interview, and her trial testimony, establish that on more than one occasion, Espino placed his penis in her buttocks.

In his opening brief, Espino challenges the sufficiency of the evidence supporting counts 4 and 5, arguing: "It appears that J[.]'s allegations against [Espino] may have been the result of cross-contamination from hearing Y[.]'s allegations, and/or suggestibility factors in the way she was interviewed. J[.] did not make any allegations against [Espino] until after hearing Y[.]'s allegations, and she, like Y[.], claimed that [Espino] put his penis on her buttocks or in between her butt cheeks. [Citation.] . . . J[.] may have thereafter misinterpreted some of her prior innocent interactions with [Espino], and embellished them over time as she responded to suggestive questions during her police and CAST interview[s]."

In support of his argument, Espino cites inconsistencies in J.'s pretrial statements and trial testimony, and conflicts between J.'s pretrial statements and testimony on the one hand, and Y.'s pretrial statements and testimony on the other. For example, J. stated that Y. was present when Espino inappropriately touched J. but Y. denied she witnessed anything happen between Espino and any of her siblings except for pinching. Espino also cites inconsistences in J.'s statements about whether, when, and how much Y. had told J. about Espino's abuse of Y., and J.'s trial testimony in which she denied or could not recall details of Espino's abuse against her which she previously had provided during her police and/or CAST interviews. Espino also cited the testimony of his defense expert on children's suggestibility and forensic interviewing in support of his argument J. was not credible.

Espino's arguments ignore the applicable substantial evidence standard of review. "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Jones, supra*, 57 Cal.4th at p. 963.)

Although J. was less forthcoming in her trial testimony than in her police and CAST interviews, and stated she did not then recall much of what Espino had done to her, even at trial, J. unequivocally testified that on two occasions Espino had acted inappropriately with her. At trial, J. also testified that she had told "the lady" during her CAST interview the truth of what had happened. During her CAST interview, J. described Espino asking her to lay down in front of him, covering her with a blanket, and putting "his private" on her buttocks. She told the interviewer it happened more than one time.

J.'s testimony and interview statements constitute sufficient evidence to support the jury's guilty verdicts on counts 4 and 5. It was the province of the jury to determine J.'s credibility as impacted by her uncorroborated statements that Y. had been present when she had been molested by Espino and to evaluate defense evidence that J.'s awareness of Espino's abuse of Y. influenced and contributed to her statements about what Espino had done to her. (See *People v. Jones, supra*, 57 Cal.4th at p. 963 ["it is not for us to say on appeal whether [the witness] was worthy of the jury's belief"].) The record does not show J.'s interview statements and/or trial testimony were inherently not credible to support Espino's convictions. (See *ibid.* [rejecting substantial evidence challenge; "nothing to which [the witness] testified was physically impossible or even implausible"].) We find no error.

## II.

## THE TRIAL COURT DID NOT ERR BY ADMITTING EVIDENCE OF CSAAS

### A.

### *Background*

Espino argues the trial court erred in allowing expert witness testimony on CSAAS because: (1) CSAAS evidence is inadmissible under the *Kelly/Frye* rule[3] in that it is based on a new scientific method that has not been accepted as reliable in the relevant scientific community; (2) it was irrelevant and was otherwise unduly prejudicial under Evidence Code section 352; and (3) the admission of CSAAS testimony deprived Espino of due process and a fair trial.

Before trial, Espino brought a motion in limine arguing evidence of CSAAS should be excluded under the *Kelly/Frye* rule and under Evidence Code section 352. Espino requested that if the trial court permitted the testimony, it be limited to the purpose of showing the reactions of the victims were not inconsistent with having been sexually abused.

The prosecution filed a motion seeking the admission of expert witness testimony by clinical and forensic psychologist Dr. Jody Ward to describe CSAAS, arguing: "In this case, the victims are the daughters of the defendant. The victims delayed disclosure to their mother, each other, their other siblings, and all authority figures. The victims did not disclose despite being in a position where the defendant could abuse them again. [¶] The defense is calling an expert to testify that children are easily suggestible in order to attack the credibility of the victims' accusations. The defense is clearly going to attack the truth of the children's accusations. There is no defense related to identity because the defendant is the victims' father, and there is no defense of intent because [of] the nature of the allegations described by the victims. The

---

[3] After *People v. Kelly* (1976) 17 Cal.3d 24, 30 (*Kelly*) and *Frye v. United States* (D.C. Cir. 1923) 293 F. 1013, 1014 (*Frye*).

only possible defense at trial is that the conduct never occurred. Thus, the children's credibility is being challenged by the defense. [¶] CSAAS testimony is imperative to dispel the common myth that if a child was sexually abused he or she would immediately disclose sexual abuse and seek help. It is important to give the jury an understanding of how child sexual abuse victims commonly react to sexual abuse, contrary to commonly conceived myths. It is important for the jury to understand why victims sometimes in these situations are extremely reluctant to disclose and to seek help from others." The prosecution also filed a transcript of Ward's prior testimony as an offer of proof.

At the hearing on the motions in limine, the trial court ruled that the proffered CSAAS evidence would be admitted, explaining its ruling in part as follows: "Based on the offer of proof by [the prosecutor], it is anticipated that there will be evidence of delayed reporting by both alleged victims, since there is [Evidence Code section] 1108 evidence that the Court is going to admit or prior alleged sexual abuse [of] both alleged victims which went unreported.

"The People also anticipate that the defense is going to attack the credibility of both alleged victims.

"So, based on that offer of proof, the Court finds that the People have sufficiently identified a myth or misconception about child sexual abuse victims in this case; and that there will be items of delayed reporting in Y[.]'s case; prior abuse that allegedly occurred prior to the date of violation in this case; and in J[.]'s case, prior abuse that was never reported to anyone.

"Pursuant to [the] *People v. Bowker* . . . line of cases, including *People v. McAlpin*, both cited by the People, the Court finds the testimony on Child Sexual Abuse Accommodation Syndrome in this case would be relevant and probative to explain the delay in reporting by both alleged victims.

"Second, . . . [¶] [t]he Court finds that child sexual abuse is not so prevalent in our society that it can be considered a common experience for everyone.

9

Therefore, Child Sexual Abuse Accommodation Syndrome which explains the reactions and/or behavior of child sexual abuse victims is sufficiently beyond the common experience that the opinion of an expert would be proper in this case to assist the jury pursuant to Evidence Code 801.

"[¶] . . . [¶]

"Under [Evidence Code section] 352, the Court finds that the probative value of the testimony on Child Sexual Abuse Accommodation Syndrome to dispel an identifiable myth that victims of sexual abuse would immediately report the abuse and to explain the delay in the alleged victim's disclosure in this case substantially outweighs any undue prejudice to the defense.

"Based on the standard of prejudice under [Evidence Code section] 352, which is whether or not this evidence is so inflammatory that it would cause the jury to convict Mr. Espino based on this evidence alone without evaluating any other evidence, then under that standard the Court finds this testimony by Dr. Ward does not rise to that level of prejudice.

"Furthermore, the Court does not find that this will incur undue time consumption. Dr. Ward, I don't believe, is going to be testifying—is going to be testifying that long."

B.

*Dr. Ward's Trial Testimony*

Ward testified at trial about CSAAS, which she defined as the pattern of behaviors exhibited by many children who have been sexually abused. Ward explained that CSAAS includes five stages or components, some or all of which child sexual abuse victims may experience. Those stages or components are: (1) secrecy, (2) helplessness, (3) entrapment and accommodation, (4) delayed and unconvincing disclosure, and (5) retraction or recantation. She stated CSAAS is considered a nondiagnostic syndrome; it is not a mental disorder or disease. She testified that CSAAS helps therapists or

10

laypeople understand why some children respond to sexual abuse the way they do when they are being sexually abused within an ongoing relationship. Unlike children who have been molested by a stranger and tend to report the abuse right away, children who have been sexually abused within an ongoing relationship may not report the abuse right away and consequently are not often believed because the delay in reporting may not be what is expected of a sexual abuse victim.

Ward stated she had no knowledge of any facts of the instant case, had not spoken with any victim in the case, was unaware of either victim's gender, had not reviewed any case-specific material, and knew nothing of the allegations or charges at issue. She stated she was not there to testify about guilt or innocence but to testify generally about what is CSAAS.

## C.

### *The Kelly/Frye Rule Does Not Apply to CSAAS Evidence*

Espino contends the trial court erred by admitting Dr. Ward's expert testimony because it did not meet the conditions of the *Kelly/Frye* rule. The decision whether to admit expert testimony is reviewed under the abuse of discretion standard. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1299.) Expert opinion may be admitted whenever it would """"assist"""" the jury and will be excluded "'only when it would add nothing at all to the jury's common fund of information.'" (*Id.* at p. 1300.)

The *Kelly/Frye* rule conditions the admissibility of evidence based on a new scientific method of proof on a showing that the method is generally accepted as reliable in the relevant scientific community. (*People v. Shirley* (1982) 31 Cal.3d 18, 34.) Reliability of the evidence is established by showing that the method has gained general acceptance in the relevant scientific community. (*Kelly, supra*, 17 Cal.3d at p. 30.) The *Kelly/Frye* rule applies only to expert testimony "based, in whole or part, on a technique, process, or theory which is *new* to science, and, even more so, the law." (*People v. Stoll* (1989) 49 Cal.3d 1136, 1156.) The *Kelly/Frye* rule applies only if "the unproven

11

technique or procedure appears in both name and description to provide some definitive truth which the expert need only accurately recognize and relay to the jury. The most obvious examples are machines or procedures which analyze physical data." (*People v. Stoll, supra*, at p. 1156.)

The theory of CSAAS is not new, but dates back at least to 1983 when it was described in Summit, *The Child Sexual Abuse Accommodation Syndrome* (1983) 7 International Journal of Child Abuse & Neglect 177. (See *People v. Bowker* (1988) 203 Cal.App.3d 385, 389, fn. 3.) Nor does CSAAS testimony purport to provide "definitive truth" (*People v. Stoll, supra*, 49 Cal.3d at p. 1156); rather CSAAS testimony attempts to disabuse laypersons of misconceptions they might have about the conduct of children who have been sexually abused. As such, CSAAS testimony, if properly limited, is not scientific evidence subject to the conditions of the *Kelly/Frye* rule.

In *People v. Harlan* (1990) 222 Cal.App.3d 439, 448-450, the Court of Appeal concluded that CSAAS is not scientific evidence subject to the *Kelly/Frye* rule. The court explained that CSAAS is not based upon a new scientific method but upon clinical experience with child abuse victims and the professional literature which evaluates the reactions of such victims. A line of cases has followed suit in holding that CSAAS evidence is admissible when offered to show that the victim did not act inconsistently with abuse, to dispel common misperceptions about a child's reaction to abuse, or to rebut a defendant's attack on the victim's credibility. (See e.g., *People v. Munch* (2020) 52 Cal.App.5th 464, 468-475; *People v. Wilson* (2019) 33 Cal.App.5th 559, 561; *People v. Mateo* (2016) 243 Cal.App.4th 1063, 1069; *People v. Perez* (2010) 182 Cal.App.4th 231, 245; *People v. Patino* (1994) 26 Cal.App.4th 1737, 1744-1745 (*Patino*); *People v. Housley* (1992) 6 Cal.App.4th 947, 956; *People v. Bowker, supra*, 203 Cal.App.3d at pp. 393-394; *People v. Gray* (1986) 187 Cal.App.3d 213, 218-220.) "Although inadmissible to prove that a molestation occurred, CSAAS testimony has been held admissible for the limited purpose of disabusing a jury of misconceptions it might

12

hold about how a child reacts to a molestation." (*Patino, supra*, 26 Cal.App.4th at p. 1744.)

In *People v. McAlpin, supra*, 53 Cal.3d 1289, the California Supreme Court addressed whether an expert witness could testify that it was not unusual for a parent to refrain from reporting a known molestation of his or her child. In concluding the testimony was admissible, the court found a direct analogy to expert testimony on common stress reactions of children who have been sexually abused. (*Id.* at p. 1300.) The court cited with approval and described as the rule the proposition that such testimony, though inadmissible to prove that the victim had in fact been sexually abused, was admissible to rehabilitate the victim's credibility when the defendant suggests a delay in reporting the abuse is inconsistent with the victim's testimony. (*Ibid.*)

The record shows the trial court permitted admission of Ward's CSAAS testimony for an admissible purpose. Espino does not contend use of that testimony exceeded its admissible purpose. The CSAAS testimony therefore was not scientific evidence subject to the conditions of the *Kelly/Frye* rule.

D.

*The Trial Court Did Not Err by Admitting Ward's Testimony*

Espino argues Ward's testimony regarding CSAAS was irrelevant and unduly prejudicial under Evidence Code section 352, and therefore the trial court abused its discretion by denying his motion to exclude such testimony. Evidence Code section 352 allows for the exclusion of evidence "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." A trial court's decision to admit or exclude evidence pursuant to Evidence Code section 352 is reviewed for abuse of discretion. (*People v. Thomas* (2011) 51 Cal.4th 449, 485.)

Contrary to Espino's assertion in his opening brief that "CSAAS evidence should be deemed inadmissible in California for all purposes," California courts have

13

held that CSAAS evidence is admissible when offered to show that the victim did not act inconsistently with abuse, to dispel common misperceptions about a child's reaction to abuse, or to rebut a defendant's attack on the victim's credibility. (*People v. Munch, supra*, 52 Cal.App.5th at pp. 468-475; *People v. Mateo, supra*, 243 Cal.App.4th at p. 1069; *People v. Perez, supra*, 182 Cal.App.4th at p. 245; *Patino, supra*, 26 Cal.App.4th at pp. 1744-1745; *People v. Housley, supra*, 6 Cal.App.4th at p. 956; *People v. Bowker, supra*, 203 Cal.App.3d at pp. 393-394; *People v. Gray, supra*, 187 Cal.App.3d at pp. 218-220.)

Here, Ward's testimony was relevant to disabuse the jurors of misconceptions they might have had about children who are sexual abuse victims, to show that Y. and J. did not act inconsistently with abuse, and to rebut Espino's attack on their credibility. Y. and J. each displayed at least three categories of CSAAS—secrecy, helplessness, and delayed disclosure.

As pointed out by the trial court at the hearing on the motions in limine, the defense sought to challenge Y.'s and J.'s credibility with regard to these characteristics. The defense theory was that some of the incidents of sexual abuse described by Y. and all of the incidents of abuse described by J. were implausible. (See *Patino, supra*, 26 Cal.App.4th at p. 1744 [CSAAS testimony is admissible for limited purpose of disabusing a jury of misconceptions about child sexual abuse victims' reactions when "the victim's credibility is placed in issue due to the paradoxical behavior"].)

At trial, Espino's trial counsel emphasized to the jury that the case involved delayed reporting of abuse. In his closing argument, counsel stated: "Now, if J[.] did not tell her mom M[.] about her own assault by her dad, that is significant. Why is that so significant? Because it shows that J[.] is probably making it up."

Ward's testimony about CSAAS was highly probative in understanding the victims' behavior following the incidents of sexual abuse each experienced. Whatever prejudice that testimony might have caused was not undue and certainly did not

14

outweigh, much less substantially outweigh, the testimony's probative value. As discussed *post*, the jury was instructed with CALCRIM No. 1193 on the limited use of Ward's testimony. Ward testified that her testimony was solely given in the capacity of a teaching expert and that she was unaware of the facts of the instant case and had no opinion about it.

The trial court did not abuse its discretion by admitting Ward's testimony under Evidence Code section 352.

E.

*The Admission of Ward's Testimony Did Not Violate Espino's Due Process Rights.*

Defendant contends that Ward's testimony was "used to unfairly corroborate the complaining witnesses' testimony thereby violating [Espino]'s federal and state constitutional due process rights." We disagree.

"[I]ntroduction of CSAAS testimony does not by itself deny appellant due process." (*Patino, supra*, 26 Cal.App.4th at p. 1747.) In *Estelle v. McGuire* (1991) 502 U.S. 62, 70, the United States Supreme Court held that admission of evidence of battered child syndrome did not violate the defendant's due process rights because the evidence was relevant. We have concluded, *ante*, the CSAAS evidence was highly relevant here to explain the victims' responses to Espino's sexual abuse.

Even if the CSAAS evidence had been erroneously admitted, reversal would be warranted only if we were to conclude that it is reasonably probable the jury would have reached a different result had the evidence been excluded. (*People v. Scheid* (1997) 16 Cal.4th 1, 21; *People v. Watson* (1956) 46 Cal.2d 818, 836.) In this case, the victims' testimony was substantial evidence of the various acts of sexual abuse with which Espino was charged. The possibility that the jury might have viewed Ward's testimony as corroboration of the victims' testimony, rather than an explanation of the victims' behavior, was very low. Ward testified that CSAAS could not be used to diagnose whether sexual abuse had occurred, and CALCRIM No. 1193, which was given

15

to the jury, limited the jury's consideration of Ward's testimony. Accordingly, if we were to consider this issue on its merits, we would conclude there was no prejudicial error.

## III.

### THE JURY WAS PROPERLY INSTRUCTED WITH CALCRIM NO. 1193

The correctness of the jury instructions is determined by considering the entire charge of the court, and not one instruction or one part of an instruction. (*People v. Bolin* (1998) 18 Cal.4th 297, 328; *People v. Saavedra* (2018) 24 Cal.App.5th 605, 614.)

Espino argues the trial court erred by instructing the jury with the final sentence of CALCRIM No. 1193, which he contends "not only inadequately explains the principles of CSAAS testimony, but also effectively instructs the jury that it may consider such testimony as evidence of the defendant's guilt."

The court instructed the jury with CALCRIM No. 1193 as follows: "You have heard testimony from Dr. Jodi Ward regarding child sexual abuse accommodation syndrome. [¶] Dr. Jodi Ward's testimony about child sexual abuse accommodation syndrome *is not evidence that the defendant committed any of the crimes charged* against him. [¶] You may consider this evidence *only* in deciding whether or not Y[.] and/or J[.]'s conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony." (Italics added.)

CALCRIM No. 1193 correctly states the law, and the trial court did not err in giving it to the jury. In *People v. McAlpin, supra*, 53 Cal.3d at page 1300, the California Supreme Court stated that CSAAS evidence is admissible to rehabilitate the credibility of a child abuse victim when the defendant suggests the victim's conduct after the abuse is inconsistent with the child's testimony. While it is true that evaluating an alleged molestation victim's "believability" may ultimately assist the jury in determining whether to credit the victim's testimony that the molestations occurred, the same may be said of any evidence that is admitted solely on the issue of a witness's credibility.

16

In *People v. Gonzales* (2017) 16 Cal.App.5th 494, the appellate court, in rejecting a challenge to CALCRIM No. 1193, stated: "Gonzales argues the instruction is inconsistent. It states that the CSAAS testimony is not evidence the defendant committed the charged crimes, and also that the jury may use the evidence in evaluating the believability of [the victim]'s testimony. Gonzales argues it is impossible to use the CSAAS testimony to evaluate the believability of [the victim]'s testimony without using it as proof that Gonzales committed the charged crimes. [¶] But the instruction must be understood in the context of [the expert]'s testimony. [The expert] testified that CSAAS is not a tool to help diagnose whether a child has actually been abused. She said that if it is not known whether a child has been abused, CSAAS is not helpful in determining whether a child has, in fact, been abused. The purpose of CSAAS is to understand a child's reactions when they have been abused. [¶] A reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [the expert]'s testimony to conclude that [the victim]'s behavior does not mean she lied when she said she was abused. The jury also would understand it cannot use [the expert]'s testimony to conclude [the victim] was, in fact, molested. The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior. Thus, under CALCRIM No. 1193, a juror who believes [the expert]'s testimony will find both that [the victim]'s apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested. There is no conflict in the instruction." (*People v. Gonzales, supra*, at pp. 503-504.)

In *People v. Gonzales, supra*, 16 Cal.App.5th at page 504, the court stated that "the jury can use [the expert]'s testimony to conclude that [the victim]'s behavior does not mean she lied when she said she was abused"; Espino argues "[t]here is virtually no difference between either witness being 'credible' and a conclusion that 'appellant was guilty.'" There is a difference, however, between saying you can use the evidence to conclude the witness did not lie, and saying you can use the evidence to conclude that the

17

witness's self-impeaching behavior does not mean she lied. The *People v. Gonzales* court gave as examples of such self-impeaching behaviors: the child still wanting comfort from the abuser and acting loving and trusting toward him; failing to cry out for help; trying to forget about the abuse; and failing to remember each incident or the precise details of each incident. (*Id.* at p. 499; see *People v. Munch, supra*, 52 Cal.App.5th at p. 474 [citing *People v. Gonzales* in rejecting challenge to CALCRIM No. 1193].)

As CSAAS evidence may properly be used to determine whether the conduct of a child abuse victim was inconsistent with that of a person who has been molested, it could properly be used to evaluate a victim's credibility. CALCRIM No. 1193 did not instruct the jury it could consider CSAAS evidence as evidence of Espino's guilt.

Espino also argues CALCRIM No. 1193 should not have been given because the last sentence contains the double negative "'not inconsistent with'" which, he contends, "means exactly the same thing as 'consistent with.'" His argument continues, "[t]herefore using Ward's testimony to determine if the conduct of Y[.] and/or J[.] was 'not inconsistent with' that of a sexual abuse victim, means using that testimony to determine if the conduct of Y[.] and/or J[.] was 'consistent with' that of an abuse victim." We disagree with Espino's logic. That a particular reaction is not *inconsistent* with having been a victim of sexual abuse does not necessarily mean the reaction is *consistent* with such victimization.

We also reject Espino's argument that the final sentence of CALCRIM No. 1193 is "fundamentally argumentative." Espino argues the instruction "expressly permits jurors to use the CSAAS evidence to determine if the complainant's behavior is consistent with that of a sexual abuse victim. But there is also a contrary inference the jurors may draw from the complainant's delayed reporting, inconsistent disclosure, and retraction—that the complainant is lying. CALCRIM No. 1193 says nothing about this

18

possible inference. Nor does the instruction offer jurors the option of rejecting CSAAS's alternative explanation for the complainant's conduct."

As acknowledged by Espino, the jury in this case was not only instructed with CALCRIM No. 1193, but also with CALCRIM No. 332, which states: "Witnesses were allowed to testify as experts and to give opinions. You must consider the opinions, but you are not required to accept them as true or correct. The meaning and importance of any opinion are for you to decide. In evaluating the believability of an expert witness, follow the instructions about the believability of witnesses generally. In addition, consider the expert's knowledge, skill, experience, training, and education, the reasons the expert gave for any opinion, and the facts or information on which the expert relied in reaching that opinion. You must decide whether information on which the expert relied was true and accurate. You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence."

CALCRIM No. 332 expressly instructed the jury that it could reject Ward's expert testimony on CSAAS. Had the jury rejected that evidence, CALCRIM No. 1193 would have become irrelevant. In such a case, there would be no CSAAS evidence for the jury to consider in determining whether Y.'s and/or J.'s conduct was "not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony."

The trial court did not err by instructing the jury with CALCRIM No. 1193.

## DISPOSITION

The judgment is affirmed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.